UNITED STATES, Appellee

v

BILL JOE PATRICK, Yeoman First Class,
U. S. Navy, Appellant

8 USCMA 212, 24 CMR 22

No. 9501

Decided September 6, 1957

*Lieutenant (jg) W. W. McNeilly, Jr.,* USNR, argued the cause for Appellant, Accused.

*First Lieutenant Daniel P. Reardon, Jr.,* USMCR, argued the cause for Appellee, United States.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was convicted by a general court-martial of a number of offenses in contravention of Article 134, Uniform Code of Military Justice, 10 USC § 934. Generally, they arose out of the following facts and circumstances: While assigned to duty in the personnel office of a Naval Air Station, the accused accepted money from persons in the Naval Service for failing to make appropriate entries in the service records or disposing of the original requests concerning the taking of leave. A sentence of bad-conduct discharge, total forfeitures, confinement at hard labor for one year, and reduction in grade to seaman recruit, was imposed. The convening authority approved the findings and sentence, except to suspend the bad-conduct discharge until accused's release from confinement or completion of appellate review, whichever occurred on the later date. The board of review, one member dissenting, affirmed. We granted accused's petition for review in order to consider three assignments of error which he claims denied him a fair trial.

The first assignment of error is that the law officer erred in not disqualifying the assistant trial counsel from representing the Government at the trial. Upon defense counsel's timely challenge, assistant trial counsel was examined under oath. The evidence he furnished disclosed that, prior to the pretrial investigation and his appointment in this case, he had been consulted for legal advice by two individuals named Woelfel and Kruczynski. They were among some forty members of the Naval Service who were questioned by the Air Station's personnel officer in the course of his informal investigation into suspected irregularities with leave papers. That investigation resulted in the preferment of the instant charges against the accused and the conviction of Kruczynski, who was charged with destroying leave papers for five of his friends as a courtesy to them and without compensation. Kruczynski's offenses were separate from those which

213

are involved in this appeal, and Woelfel was not prosecuted, for his only involvement in the offenses with which the accused is charged was as a purchaser of leave. Fear of implication in the irregularities which had taken place in the personnel office prompted Woelfel and Kruczynski to seek the advise of a military lawyer. Originally both were clients of Lieutenant (jg) Clark, but, due to the possibilities that charges might be preferred against them and that they might be tried subsequent to Clark's release from active duty, the officer who was later detailed as assistant trial counsel in the case at bar was consulted on several occasions.

The defense to support this assignment of error relies upon Article 27(a), Uniform Code of Military Justice, 10 USC § 827, which states in substance that no person who has acted for the defense shall subsequently in the same case act on behalf of the prosecution. It is contended that consulting with Woelfel and Kruczynski, for all practical purposes, amounts to prior participation by assistant trial counsel for the defense in this case and thereby disqualifies him from assisting in the prosecution.

The case of United States v Stringer, 4 USCMA 494, 16 CMR 68, is contrary to accused's assertion and ■ the facts there presented established a much stronger case for disqualification. In that instance, assistant trial counsel had previously represented other persons for offenses closely related to, but not the same as, those for which the accused stood trial. Yet we reached the conclusion that he was not disqualified on that showing alone. As far as can be gleaned from the record in this case, assistant trial counsel's services were not rendered to others even facing the prospect of being charged with offenses involving this accused. Kruczynski was charged with and convicted of separate and distinct offenses, and there is no suggestion that the accused aided or abetted him in their commission. Woelfel was not charged at all. A comparison of the facts in the two cases militates against the accused in this case, for in that instance others received legal representation in the courts for offenses arising out of the same transaction, while here there was merely preliminary legal consultation with a view to possible representation mostly on matters which grew out of separate transactions.

As part of the rationale of Stringer, supra, the Court pointed out that the phrase "acted in the same case" found in Article 27(a) could be extended to encompass those instances where there was a fair risk that the prosecution's frame of reference concerning a given case had been expanded by obtaining otherwise unavailable or privileged information. However, we find nothing in this record which would indicate that the Government strengthened its position by assigning the officer to be assistant trial counsel. His purported clients contributed nothing to the conviction of this accused, and he had no personal interest in the outcome. Appellate defense assert to the contrary, for they say it is fair to assume that the assistant trial counsel utilized information previously obtained from Woelfel and Kruczynski in prosecuting the accused. In other words, they would have us infer that otherwise unobtainable testimony came to the prosecution because of assistant trial counsel's prior interviews with these two persons. There are three reasons appearing in the record which render that inference untenable. First, as we read the record, it precludes a finding that any information helpful to the Government was obtained. Assistant trial counsel testified that this was a contingent employment; that he took no notes during the interviews; that he obtained no information from the two persons which affected his conduct as assistant trial counsel; and that he could not even remember what he was told by his conferees at that time. His contact was casual and sometime prior to trial. Second, assuming he picked up some morsels of information, they could not be used, for whatever intimate knowledge Woelfel and Kruczynski had of accused's activities they refused to divulge at trial, asserting their Article 31 privilege not to answer. Woelfel, called as a witness at the pretrial hearing,

refused to talk even to the extent of acknowledging his own prior written statement. He alone figured in one of the specifications of this case as a purchaser of leave from the accused, and of this specification the accused was not found guilty due to his assertion of his privilege not to testify at the trial. Kruczynski's name did not appear in any specifications. He was not called as a witness at the pretrial hearing, nor was it expected that he would be summoned by the prosecution or the defense at trial. Although he was actually called at the trial by the court itself, it was to no avail. Third, the accused was finally convicted of only those specifications which alleged transactions in which one Browning acted as go-between for others or as a purchaser of leave himself. Browning alone identified the accused, and that source of information was available to the prosecution from the beginning.

With sworn testimony and indications to the contrary, and with no evidence to support an inference, we cannot conclude that assistant trial counsel in this case was likely to have used information obtained exclusively from Woelfel or Kruczynski in prosecuting the accused. Not only was this unlikely on the basis of this record at the time assistant trial counsel's qualifications were challenged by defense counsel but also in the light of the trial itself. Furthermore, the developments at that hearing conclusively establish that the assistant trial counsel had no interest adverse to the accused, for his clients refused to assist the prosecution.

The next error assigned concerns the law officer's denial of defense counsel's motion for a mistrial. The motion was made during the initial phase of trial counsel's direct examination of Browning, the prosecution's key witness. Trial counsel sought to elicit from him why one Barnett had introduced him to the accused. Upon objection, trial counsel stated he was not seeking to elicit any statement of a third party from the witness, although he rephrased his questions a number of times and finally succeeded in doing so. Defense counsel protected his record adequately, but finally the witness was permitted to answer this question: "What made you think you'd get leave from Patrick?" and his response was: "Well, I had been told by Barnett that Patrick was selling leave, sir." Immediately defense counsel moved to strike the answer and to have a mistrial declared on the ground that the objectionable hearsay statement by the witness was highly prejudicial to accused and that its effect could not be eradicated from the court members' minds by an instruction from the law officer to ignore it. The law officer sustained the motion to strike and instructed the court to disregard the testimony but refused to declare a mistrial.

Appellate defense argues that a mistrial should have been granted because the impact on the court members' minds was such that any admonition by the law officer was ineffective and futile. The Government vigorously opposes this assignment on various principles of law and on the factual basis that the witness covered the same ground that accused was selling leave when he stated that he approached the accused to arrange for uncredited leave for himself; that he was told by accused that the matter could be arranged; that it would cost him $2.00 per day; that accused arranged the leave; and that there were five other similar transactions which he handled for the accused.

It is now well established that the law officer has the same discretion as the civilian trial judge to declare a mistrial. United States v Stringer, 5 USCMA 122, 17 CMR 122; United States v Richard, 7 USCMA 46, 21 CMR 172. But the remedy is a drastic one. Dolan v United States, 218 F2d 454 (CA 8th Cir) (1955). Ordinarily an error in admitting evidence can be cured by striking it and instructing the court members to disregard it. Only in the extraordinary situation, where the improperly admitted testimony is inflammatory or highly prejudicial to the extent that its impact cannot be erased reasonably from minds of an ordinary person, is there occasion for the law officer to grant a motion for a mistrial. An appellate court is de-

tached from the courtroom drama and, therefore, the law officer's ruling on such a motion will not be disturbed on review unless there was a clear abuse of discretion on his part. In United States v Stringer, supra, this Court first held that a motion for mistrial was an appropriate maneuver in military law. We equated the powers of the law officer to the civilian judge, and both Judge Brosman and the Chief Judge quoted the following excerpt from United States v Perez, 9 Wheat 579 (U.S. 1824):

". . . We think, that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the judges, under their oaths of office."

We have operated under that general rule, and so we measure the facts of this case by that yardstick. Here the law officer exercised his discretion in favor of the prosecution, and we cannot say his ruling was unsound and unjust or that there was a manifest necessity that he rule in support of the accused. The testimony involved an isolated statement made by a third party who is unidentified by the record. It did not tend to incite hostility or animosity. It was not degrading or character destroying. It was simply a bit of gossip which, at worst, character-ized the accused as one who reputedly was selling leave. Certainly in the backdrop of this record, the statement was not so important and so impressive that its effect could not be removed by the immediate response of the law officer.

In United States v O'Briski, 2 USCMA 361, 8 CMR 161, we had occasion to deal with a situation where incompetent evidence of a prejudicial nature was admitted into evidence and subsequently stricken by the law officer with directions to the court-martial members to disregard it as evidence. We there said:

"The question before this Court assumes arguendo that it was error to receive the testimony respecting threats rejected in the trial court. Whether such testimony was error in this case—or would be error in all cases—we need not and do not now decide. Here the law officer did all that he could to remove the challenged testimony from consideration by the court; he ordered it stricken, and he instructed the court specifically to consider only testimony which had been admitted in evidence. We must acknowledge in all fairness that the damaging effect of evidence improperly received may not be cured—always and wholly— by an order directing that it be expunged from the record and disregarded. At the same time, we cannot ignore the fact that sound judicial administration requires that the lion's share of such errors be regarded as fully reparable through proper instructions. Improper examination on the part of trial counsel which is persistent and contumacious, and which permeates a record, is, of course, a horse of another color."

Our views in that case are in substantial agreement with those we find in Hopt v People of Utah, 120 US 430, 7 S Ct 614, 30 L ed 708. In that instance, the Supreme Court of the United States laid down this rule, and it has been followed over the years:

". . . But, independently of this consideration, as to the admissibility of the evidence, if it was erroneously

216

admitted, its subsequent withdrawal from the case, with the accompanying instruction, cured the error. It is true, in some instances there may be such strong impressions made upon the minds of a jury by illegal and improper testimony that its subsequent withdrawal will not remove the effect caused by its admission; and in that case the original objection may avail on appeal or writ of error. But such instances are exceptional. The trial of a case is not to be suspended, the jury discharged, a new one summoned, and the evidence retaken, when an error in the admission of testimony can be corrected by its withdrawal with proper instructions from the court to disregard it. We think the present case one of that kind."

We conclude these authorities call for us to hold that any influence caused by the admission of the hearsay statement was dispelled effectively by the law officer.

The final error assigned by appellate defense counsel has to do with the testimony elicited from Kruczynski, one of the two additional witnesses the court required to be called. As previously mentioned, he refused to answer any questions except those which touched on his own conviction for destruction of leave papers as a friendly gesture to five of his friends. Part of the testimony cast some light on the manner in which he helped his buddies, and it is now asserted that this improperly informed the court of one manner in which the offense could be committed. Although defense counsel made no objection before, during, or after Kruczynski's testimony and cross-examined him to raise one of his present defenses, it is now contended that the law officer should have, on his own initiative, either refused to permit its introduction or had it later stricken.

Without going into the admissibility of the testimony, we are not prepared to saddle that sort of a burden on the law officer. Ordinarily we will not re-view an assignment of error based upon the inadmissibility of evidence if defense counsel fails to object to its admission at trial or to make some move to have it stricken or limited in its application, excepting where its admission works a manifest miscarriage of justice. The accused was represented by military and personally selected civilian counsel. The record is replete with incidents which show that they were well versed in military law and the rules of evidence. The court was entitled to call the witness and have him testify to material and competent evidence, but he avoided testifying to any information except about his own conviction. In that manner he escaped helping the Government in its prosecution of the accused, assuming he had any relevant and competent firsthand information. The only protest lodged against the testimony is that, at best, it disclosed the witness had access to the leave papers and that he destroyed them before they were recorded in the service record of the person involved. There is nothing unusual, startling, or different about that method of operation, and the witness specifically refused to answer any question concerning any offense of which the accused was charged. Under those circumstances, we are unwilling to require that the law officer refuse the admission of testimony from a court witness without some objection by the accused. Defense counsel have some responsibility to assist in screening the evidence, and in the case at bar they must have been satisfied. They neither objected to its admission nor made a motion to strike it after they were apprised of its content, and the record overwhelmingly shows they knew of those remedies. In our opinion, this is a case where, if there is error on this ground—which we doubt—it will not be used as a vehicle for reversal.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge FERGUSON concur.