UNITED STATES

v.

Master Sergeant William E. HIGDON, 535–28–1566, US Army, Headquarters and Headquarters Detachment, Troop Command, US Army Missile Command, Redstone Arsenal, Alabama.

CM 428681.

U. S. Army Court of Military Review.

Sentence Adjudged 10 June 1971.

Decided 5 Dec. 1975.

Appearances: Appellate counsel for the Accused: CPT Sammy S. Knight, JAGC; CPT Jack E. Seaman, JAGC; CPT J. Houston Gordon, JAGC; MAJ Richard J. Goddard, JAGC; LTC Franklin D. Arness, JAGC; LTC James Kucera, JAGC; LTC Edward S. Adamkewicz, Jr., JAGC; COL Arnold I. Melnick, JAGC. Appellate counsel for the United States: CPT Gary F. Thorne, JAGC; CPT R. Craig Lawrence, JAGC; LTC Donald W. Hansen, JAGC; LTC Ronald M. Holdaway, JAGC.

## OPINION OF THE COURT

CLAUSE, Judge:

Appellant was tried by general court-martial for two offenses of larceny and three offenses of receiving graft, in violation of Articles 121 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 921, 934. He was convicted of the two larceny offenses and of one of the three graft offenses. The sentence was to be dishonorably discharged, to forfeit all pay and allowances, and to pay a fine of $25,000.00. The sentence was approved as adjudged.

Appellant's initial assignment of error concerns the legal and factual sufficiency of the evidence to establish his guilt of the larceny charges. The prosecution evidence can be briefly summarized as follows. During the period in question appellant was serving as the Secretary-Custodian of the United States Army Republic of Vietnam, Non-Commissioned Officers and Enlisted Men's Open Mess System (hereinafter referred to as the USARV NCO/EM Open Mess System). The James Henry Organization was the sales representative for Liggett and Myers Tobacco Company in Viet-

nam and other overseas areas. In order to promote the sales and use of certain brands of its cigarettes, Liggett and Myers set up promotional activities aimed at the soldiers in Vietnam. One such program offered the buyer a cash promotional allowance of $12.00 per case of cigarettes on the initial purchase of certain brands. Although it was expected that these funds would be used by the Club to promote the particular brand of cigarettes for which the allowance was given, there was no limitation placed on the use of these funds. This promotion was managed by the James Henry Organization under its contract with Liggett and Myers. These promotional funds were the property of the Club which placed the order and were given to the custodian in his representative capacity. They were not a bribe to the custodian for placing the order or paid to him for his services in promoting the cigarettes.

Appellant, as Secretary-Custodian of the USARV NCO/EM Open Mess System, placed an order for 600 cases of cigarettes for which the $12.00 per case promotional funds were being paid. The cigarettes were to be shipped in three equal monthly increments. Two $1,200.00 checks were identified as the promotional payment for the first shipment of 200 cases of cigarettes. At appellant's request the checks were made payable to "Georg Schell." A third check in the amount of $4,800.00 was identified as representing the final payment for the remaining 400 cases. This check was also made payable to "Georg Schell." Two of the checks were signed by Glenn Faulks, a general manager of James Henry Organization, and the other by his accountant at Faulks' direction. The appellant was known by the names "Georg Schell" and "Seal" at a Hong Kong foreign exchange firm where he had cashed checks and also had money transferred to a Swiss bank account. After disbursement of promotional funds, the James Henry Organization was reimbursed by Liggett and Myers upon proof of payment to the customer. The purchase orders and testimony show that the sale in question was made to the USARV NCO/EM Open Mess System and

the promotional funds were paid for their use and benefit. Two of these checks, representing promotional funds, were traced to the bank account of a business firm of which appellant was a partner. The third check was deposited to a Swiss bank account which was also traced to appellant. We are satisfied that the appellant received the $7,200.00 in promotional funds as Secretary-Custodian of the Open Mess System, that these funds were the property of the Club System, and that appellant wrongfully withheld this sum for his personal gain with the intent of permanently depriving the Club System thereof, thus constituting the offense of larceny.

The main thrust of the attack on the sufficiency of the evidence is the lack of credibility of the Government's witnesses, and the failure to establish ownership of the funds in the USARV NCO/EM Open Mess System.

After careful analysis and consideration of all the evidence, we are satisfied that it was more than ample, both legally and factually, to establish appellant's guilt beyond a reasonable doubt.

The second assigned error concerns the legal and factual sufficiency of the evidence to establish appellant's guilt of the offense of receiving graft in the amount of $723.00. In summary, the Government's evidence is to the effect that appellant, in his capacity as Secretary-Custodian of the USARV NCO/EM Open Mess System, procured the approval of and entered into a refrigeration maintenance contract with Universal Consultants, Inc., which contract was conditioned upon appellant's receipt of kickbacks based upon work performed under the contract. A check in the amount of $723.00, payable to "Georg Schell," was traced to the appellant and constituted a payment of graft. Appellant's principle attack upon the Government's case was focused upon the credibility of the Government witness and the alleged uncertainty of the witness Kowatch about the exact purpose of the $723.00 check. We are satisfied, as were the court members that the $723.00 check was not a donation to a Vietnamese charity

but was given to appellant as a kickback under the contract with Kowatch. Although there are minor inconsistencies in the testimony of the Government witnesses, these inconsistencies do not detract from the central issue of the graft payment and we find the evidence sufficient to support the court's findings beyond a reasonable doubt.

■ United States Army, Republic of Vietnam Regulation 230–60 required that a "Secretary-Custodian" be "appointed on orders." Appellant contends that as it was never shown that he was so appointed, the military judge erred to his substantial prejudice by denying the defense motion to strike all testimony by Government witnesses to the effect that he was the Secretary-Custodian of the USARV NCO/EM Open Mess System on the dates specified in the specification. We disagree. Appellant's motion was based upon an application of the best evidence rule. That rule applies where the issue to be resolved is the contents of a particular writing and provides that the "original" of the writing is the best evidence of its own contents and must, therefore, be introduced except in certain specified circumstances. Paragraph 143a (1), Manual for Courts-Martial, United States, 1969 (Revised edition). The rule does not apply as in this case where the fact of his status as Custodian exists independent of the writing in which his appointment was announced. The evidence in the instant case was overwhelming that appellant was the Secretary-Custodian of the USARV NCO/EM Open Mess System during the period in question. Failure to introduce a written order to that effect is of no consequence.

At the close of the Government's case the defense moved for a finding of not guilty as to the larceny offenses. Appellant assigns as error the denial of this motion. The Manual provides that, "[I]f there is any evidence which, together with all inferences which can properly be drawn therefrom and all applicable presumptions, could reasonably tend to establish every essential element of an offense charged or included in

any specification to which the motion is directed, the motion will not be granted." Paragraph 71a, Manual for Courts-Martial, United States, 1969 (Revised edition). *See also United States v. Tobin*, 17 U.S.C.M.A. 625, 38 C.M.R. 423 (1968). The evidence was more than sufficient to meet the foregoing test and supports the ruling of the judge.

■ On the day trial was scheduled to commence with court members, the defense requested a continuance. One of the reasons given was to permit the military defense counsel to obtain from the Government and transport to a defense expert certain handwriting exemplars which the Government planned to use in the presentation of its case. The continuance was denied. Appellant now contends that the ruling denied his rights of confrontation, to obtain evidence, and to discovery. We disagree.

Almost from the outset of the Government's proceedings against the appellant, it was known that as a part of its case, the Government would rely on the testimony of handwriting experts as to the endorsements on certain checks. Copies of the reports of Government experts were available at the Article 32, 10 U.S.C. § 832, Investigation. Several Article 39(a), 10 U.S.C. § 839(a), sessions were held over an eight and a half month period during which time numerous discovery motions were presented and ruled upon by the judge. The defense request, coming as it did on the first day of trial before members, was not timely. The judge did, however, offer to appoint a court master as a method of accommodating the defense request for examination of the documents by its expert without the necessity of further postponing the trial. The defense refused to avail itself of this procedure, insisting on a continuance as the only acceptable relief. Under these circumstances the action of the judge was reasonable and did not constitute an abuse of his discretion.

■ Appellant assigns as error the denial of the discovery motion presented during the testimony of the Government witness

Faulks. The precise nature of the matter sought varied, but, of principal interest was certain unidentified documents that may have been available to a congressional committee and the witness Faulks during his testimony before that committee. Although these documents were apparently not utilized during Faulks' testimony before the committee, the defense now desired that any such documents be made available to them. The military judge ascertained that the defense had been furnished a verbatim transcript of Mr. Faulks' testimony before the committee at least two months previously and that the Government was unaware of any other testimony by the witness. The judge asked the trial counsel if he had anything else in his hands that had not been furnished to the defense, to which he received a negative reply. Appellant asserts that the ruling of the judge amounted to a limiting of the discovery rights of the defense to matters "in the hands of the trial counsel." We do not agree with this assertion and find that the judge's ruling represented a refusal to require the Government at that late date to further explore for possible additional matter which might be of aid to the defense. The nature of the motion and the circumstances surrounding it indicate that the judge properly classified the motion as a fishing expedition. He did not abuse his discretion in denying same. *See United States v. Franchia*, 13 U.S.C.M.A. 315, 32 C.M.R. 315 (1962); *United States v. Ross*, 511 F.2d 757 (5th Cir. 1975). We find no indication of a suppression by the prosecution of evidence either known or available to them.

During the course of the preliminary proceedings against appellant, there were numerous defense requests of a general nature for the production of evidence. Many of these motions were granted with the caveat that any information which the trial counsel considered should not be released, be turned over to the judge for his in camera determination. Subsequent to the trial it was determined by the trial counsel that four such documents that had been turned over to the judge for his determination as to releasability had inadvertently been retained by the judge and not released although the judge had apparently determined to release the information to the defense. These documents were added to the record in the post-trial review and are available for our consideration. The appellant alleges that the denial of the right to examine and use these documents resulted in substantial prejudice to the defense. Without passing upon the merits of the judge's determination to make the documents available to the defense, we will consider the merits of the appellant's allegation that he was prejudiced by the failure to release the information.

We first conclude that the failure to release the information was inadvertent and was not intentional on the part of the judge or the trial counsel. The trial counsel's action in bringing this matter to the judge's attention after the trial, clearly indicates the lack of any intentional suppression on his part. When one considers the voluminous information filed and considered by the judge during this lengthy trial, it is understandable that these documents were inadvertently misplaced.

The situation in the instant case is similar to that in which an accused requests a new trial on the basis of evidence available to the Government before trial but not made available to the accused. In *United States v. Rosner*, 516 F.2d 269 (2d Cir. 1975), the rule is summarized as follows:

"If the government deliberately suppresses evidence or ignores evidence of such high value that it could not have escaped its attention, 'a new trial is warranted if the evidence is merely material or favorable to the defense.' *United States v. Kahn*, 472 F.2d 272, 287 (2d Cir. 1973), cert. denied, 411 U.S. 982, 93 S.Ct. 2270, 36 L.Ed.2d 958 (1973). However, when the government's failure to disclose is inadvertent, a new trial is required only if there is 'a significant chance that this added item, developed by skilled counsel as it would have been, could have induced a reasonable doubt in the minds of

enough jurors to avoid a conviction.' Id. *United States v. Miller,* 411 F.2d 825, 832 (2d Cir. 1969); see *United States v. Keogh,* 391 F.2d 138, 147–48 (2d Cir. 1968)."

We do not believe that the inadvertent withholding by the judge in the instant case warrants any stricter standard than that which would be applied to a prosecutor under similar circumstances. We have carefully considered the four items in question under this criteria and do not find that the availability of any of the items to the defense would likely have resulted in a different verdict by the jury.

The items in question relate only to the conviction under Charge II. The principal item is a letter from a Government witness, Baker, to a Government criminal investigator to whom he had previously furnished information concerning the appellant's activities. In this letter Baker sets up certain conditions to his returning to the United States to testify against the appellant and reflects his generally antagonistic attitude towards the appellant. Contrary to the appellant's assertions, we do not find that the letter establishes or implies that a deal existed between the witness and the Government with respect to his testimony, a situation condemned in *Gaiglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). There is no indication that any of the conditions set forth therein were met or that any other advantage was accorded to the witness. It is clear, however, that this information may have been helpful to the defense in its efforts to impeach Baker's credibility. Although Baker's testimony as to the graft charge was important, there was ample other evidence of record to support the court's findings as to this charge. Even conceding that this additional information may have resulted in completely discrediting Baker's testimony, we do not believe that it would have affected the verdict of the jury in light of the other evidence presented to them.

A supplemental assignment of error also concerns appellant's request for information. Certain monthly profit and loss statements of the USARV NCO/EM Open Mess System covering the period January 1967 through December 1968 were requested. Government counsel agreed that the material was relevant and stated that the matter would be made available. After repeated efforts to obtain all the requested material, only some of it was located and made available. Failure to produce all the material requested was attributed to an inability to locate the specific records. The judge finally determined that the trial counsel had made every reasonable effort to obtain the documents and he would not order further action by the prosecution. It is contended that failure to produce these records resulted in denying appellant due process of law. Appellant asserts that these documents would have shown that the Club System's financial status prior to his management thereof was substantially inferior to that accomplished through his management and efforts. Further, that these records would show that appellant's motivation and actions were only to benefit the Club System and would negate any motive to steal from the Club.

 There is no indication nor is it alleged, that this information was either negligently or intentionally withheld or otherwise suppressed by the prosecution. The information was never within the custody or control of the prosecutor and we are satisfied that he made every reasonable effort to obtain the records for the defense. We are satisfied that the judge did not abuse his discretion by refusing to order further action to locate the documents. This case is distinguishable from *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); and *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 12, 17 (1959), relied upon by appellant. Even weighed under the standards of *Brady v. Maryland, supra,* we do not consider the assignment to have merit. The materiality of information requested under *Brady* has been held to encompass more than mere relevancy or importance to the defense. It has been held

that before nondisclosure of evidence reaches a level of constitutional significance, the evidence must be critical and highly significant. *Luna v. Beto*, 395 F.2d 35 (5th Cir. 1968). "Materiality means more than that the evidence in question bears some abstract logical relationship to the issues in the case. . . . There must be some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor." *United States v. Ross*, 511 F.2d 757, 762–763 (5th Cir. 1975). *See Calley v. Callaway*, 519 F.2d 184 (5th Cir. 1975). The matter intended to be proven in this case was established by other available evidence. That appellant had placed the Club System in outstanding financial condition was not in doubt. The inferences that could be drawn from this fact were forcefully presented to the court members by the defense for their consideration. The Government's inability to provide appellant with the desired documents did not significantly affect the presentation of his case.

Two of the assigned errors concern the cross-examination by trial counsel of two defense witnesses. It is contended that the questions of trial counsel were accusatory in nature and led to the introduction of unsubstantiated innuendos. One of the questions particularly complained of was as follows:

"Q: Mr. _____, I'm going to ask you one more question and I'm gonna ask it plainly. Have you been paid to give your testimony here in this courtroom?

A: No, sir.

Q: No further questions."

■■■ The mere putting of certain questions, even though asked in an exploratory rather than accusatory manner, may create an impression on the jury that there is some basis of truth for the question even when it is answered in the negative. When counsel has no reason to believe that it will be answered other than in the negative and has no evidence of or reasonable grounds to believe the truth of its implication, such questions are improper. *See Lee Won Sing*

*v. United States*, 215 F.2d 680 (1954); 6 Wigmore, Evidence § 1808(2) (3d Ed). Counsel acknowledged in an out-of-court hearing that he had no information on which to base this question of the witness. It is apparent from his questions in general and his statement at the out-of-court hearing, that the question was not the product of intentional misconduct, but rather the results of momentary frustration and an error of judgment. The issue for determination is whether this and other complained of questions of the two witnesses resulted in a fair risk of prejudice to the substantial rights of the accused. With respect to the question concerning the possibility of paid for perjury, we note that the question apparently created little or no impact at the time it was asked, as there was no objection by defense counsel or comment by the judge, then or during subsequent out-of-court hearings. The matter was not raised until several court sessions later when it had apparently become the subject of a news media report. The military judge considered that the special instructions he had given the court members after the cross-examination by trial counsel were adequate to preclude any prejudice to the appellant resulting from the cross-examination, although this question had not been specifically noted. Defense counsel chose to treat the matter during his closing argument rather than request further instructions at that time. The military judge during his instructions on findings again cautioned the court members regarding questions containing innuendos and inferences of wrongdoing. Even the giving of proper instructions may not in some cases be sufficient to overcome the possible prejudice arising from such an error. *See United States v. Yanuski*, 16 U.S.C.M.A. 170, 36 C.M.R. 326 (1966); *Lee Won Sing, supra*. Each case must be evaluated on its own merits. Trial counsel's questions in the instant case were not the result of the type of conduct condemned in *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). Under the circumstances of this case, we find the possibility of harm from the accusatory or improper questions

to be *de minimis.* This is particularly true when one also considers the appropriate instructions of the military judge to disregard the implications of these type questions. *United States v. Shaughnessy,* 8 U.S.C.M.A. 416, 24 C.M.R. 226 (1957); *see also United States v. Britt,* 10 U.S.C.M.A. 557, 28 C.M.R. 123 (1959). For the foregoing reasons, we find no merit in either of the assigned errors.

■■■ A defense witness stated during his testimony that the appellant had introduced him to a Mr. William Crum. This name had not previously been mentioned during the trial and prompted a court member to advise the military judge that he had knowledge that the Army had directed all clubs to cease doing business with the Crum organization. The member indicated that he had no personal knowledge of any wrongdoing by the Crum corporation or of the basis of the Army's action. His knowledge was, however, supplemented by what he had read and heard through the news media. The military judge inquired into the extent of the members knowledge and its possible effect upon him in performing his duty as a court member. The judge apparently satisfied himself that the member could continue to sit impartially. After further examination by the defense counsel, the defense moved for a mistrial. Defense counsel argued that despite the witness' statement that he could remain impartial and his apparent candor and honesty, the witness' knowledge was such that he should not be permitted to remain. Defense counsel would not, however, exercise his right to challenge the member for cause. He noted that with a five member court this could only result in bringing in a new member and reading him the record of the past proceeding. This procedure, while provided for in military law, was considered by him to be unconstitutional and would also result in a mistrial. There was no challenge and the judge denied the mistrial motion.

Appellant asserts that it is obvious that if a challenge for cause had been made it would have been granted. Thus, when the judge denied the defense motion for mis-

trial, he forced the appellant to choose between continuing the trial with a member who should have been eliminated or completing the trial with a new member after exercising his right to challenge the disqualified member. It is this choice which appellant asserts was improper and he maintains that the only appropriate remedy was to declare a mistrial. The judge's failure to do so is alleged to be an abuse of discretion resulting in appellant being denied a fair trial. We disagree.

The main thrust of the defense objection to the member's continued participation was that his exposure to news media reports made him too knowledgeable of the circumstances surrounding the offenses charged. In *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961), it was stated that:

> "It is not required, however, that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court."

As was noted in *Dowd,* mere knowledge is not necessarily disqualifying. The member's assertion of impartiality is especially credible in view of his bringing to the judge's attention his knowledge of Crum.

The conclusion that the judge would have granted a challenge for cause, if made, is unsupported by the record. After denying the defense motion for a mistrial, the judge noted that the defense had failed to exer-

cise their option of challenging the member for cause. We see nothing in his statement or inferentially from the record to indicate that such a challenge would have been granted. By reminding the defense that they had failed to exercise this right, he merely called to their attention an additional right which would be appropriate to the situation. If any inference can be drawn, it is much more probable that such a challenge would have been denied on the basis that the judge found the member to be neutral and unbiased. We find that the record would clearly support the denial of a challenge against the member if it had been made.

The issue of whether Article 29(b), Uniform Code of Military Justice, 10 U.S.C. § 829(b), is unconstitutional is not a factor for determination in this case. We need only decide whether the judge abused his discretion in denying the motion for mistrial and whether this resulted in the denial of a fair trial. Given our conclusion that the member in question was still able to render a fair and impartial judgment on the evidence presented, we find that the judge did not abuse his discretion in denying the motion for mistrial. *See United States v. Patrick*, 8 U.S.C.M.A. 212, 24 C.M.R. 22 (1957).

 Two of the assigned errors concern the closing arguments of trial counsel. The first relates to his comments during argument on findings and the other to his recommendation during closing argument on sentence that the court impose the maximum punishment. Contrary to the appellant's interpretation of the remarks on findings, we do not consider the reference to "other promotions, other clubs, other custodians" as an effort to have the court rely on evidence not submitted. Counsel's comments were obviously aimed at focusing the courts attention on the issues of the case and constituted fair advocacy. *See United States v. Tackett*, 16 U.S.C.M.A. 226, 36 C.M.R. 382 (1966). We likewise find no error in trial counsel's comment as to sentence. The trial counsel is entitled to present the Government's position in argu-

ing on the sentence. Paragraph 75f, Manual for Courts-Martial, United States, 1969 (Revised edition). What is prohibited is the expression of or any intimation of the views of the convening authority or any higher authority. Paragraph 44g(1) and 75f, Manual for Courts-Martial, United States, 1969 (Revised edition); *United States v. Olson*, 7 U.S.C.M.A. 242, 22 C.M.R. 32 (1956). This he did not do. Appellant stresses the similarity between the fine recommended and that adjudged, however, of equal note is the confinement recommended and the fact that none was adjudged. Although not necessarily controlling, of significance in the area of counsel argument is the lack of an objection by opposing counsel. *See United States v. Ryan*, 21 U.S.C.M.A. 9, 44 C.M.R. 63 (1971); *United States v. Wood*, 18 U.S.C.M.A. 291, 40 C.M.R. 3 (1969).

 Certain regulations governing the acceptance of contributions and donations by open messes were introduced by the defense. In support of a motion for a finding of not guilty as to the larceny offenses, the defense requested that the judge apply these regulations in support of defense's premise that the Club could not, and therefore never did, become entitled to the $7,200.00 concerned in Charge I. Thus, defense argued, one of the essential elements of the offense was lacking. Appellant now assigns as error the judge's refusal to apply the regulations as requested, while selectively applying them in circumstances detrimental to appellant.

The judge agreed that the regulations were violated, both by the offer of the promotional funds as well as by their acceptance. However, because of the fiduciary relationship of appellant to the Club, he determined that any funds given to him in that capacity became the assets of the Club System, which then had a greater right to the assets than appellant. The fact that the Club System may have acquired its right of ownership improperly did not negate the evidence that the funds were intended for the Club System and paid to appellant as Secretary-Custodian thereof and improperly withheld by him despite the

Club System's superior right of ownership. *See* paragraph 200*a* (2) and (3), Manual for Courts-Martial, United States, 1969 (Revised edition); *United States v. Waldron*, 35 C.M.R. 611 (A.B.R. 1965). The judge's comments on his reasons for denying the motion, when considered in light of the whole case and his subsequent instructions to the members, do not reflect that he incorrectly considered a violation of the regulation as constituting larceny, or that the manner of receipt of the funds by appellant was unimportant. We find that his ruling on the motion for a finding of not guilty was correct.

 Appellant submits that the judge erred to his substantial prejudice by instructing the court members that they could infer, from the evidence presented to them, that appellant possessed the necessary intent to permanently deprive the USARV NCO/EM Open Mess System of the $7,200.00 specified in Charge I. After reviewing the evidence and listing the elements of the offense, the judge instructed the members concerning the use of circumstantial evidence to prove the essential element of intent to permanently deprive.

The appellant's assertion is apparently based upon the alleged insufficiency of the evidence. We find that the instruction was proper and the evidence sufficient for a rational juror to find the inferred fact (intent) beyond a reasonable doubt. *See Barnes v. United States*, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973). The existence of an intent to steal must, in most cases, be inferred from the circumstances. Paragraph 200*a* (6), Manual for Courts-Martial, United States, 1969 (Revised edition).

 Appellant asserts that he was denied his right to a fair trial because of the misconduct of court members during their deliberations on the findings. This assigned error is based upon an affidavit by one of the court members furnished to the defense counsel after trial. In essence the affidavit states that the initial balloting resulted in findings of not guilty of Charge I and its two specifications and of one specification of Charge II. This balloting was allegedly followed by a discussion among the members during which comments were made as to the consequences of an acquittal, the cost of bringing the case to trial, and the probability of the existence of other evidence which was not presented. Following this discussion the members decided to adjourn for the day. The continued deliberations of the following day resulted in the findings as announced. The affidavit makes no mention of whether or not the alleged reballoting was the result of a vote to reconsider, but the members had been properly instructed on the right to reballot and the procedure therefor. There is no reason to believe the members did not follow the judge's instructions.

Acceptance for military trials of the well established rule concerning the impeachment of jury verdicts was announced by the Court of Military Appeals in *United States v. Bourchier*, 5 U.S.C.M.A. 15, 17 C.M.R. 15 (1954). In determining not to accept supplemental affidavits to impeach the findings of the court-martial, the Court stated:

> "The fundamental rule that the testimony of jurors will not be received to impeach their verdict, with respect to matters which essentially inhere herein, is too well settled to require citation of authority. We are not unmindful of the fact that an exception to this principle permits the reception of such testimony when it relates to extraneous influences to which the jurors have been exposed." [Citations omitted].

This rule, as well as the reasons therefor, was recently reexamined and reaffirmed by this Court in the case of *United States v. Perez-Pagen*, 47 C.M.R. 719 (A.C.M.R. 1973). It was recognized therein that only where extraneous prejudicial information was improperly before the jury, or where outside influences were improperly brought to bear on the jury, would courts properly interfere. *See also United States v. Johnson*, 495 F.2d 1097 (5th Cir. 1974); Federal Rules of Evidence, Rule 606(b). Neither of these exceptions are made out by the instant affidavit. We find the Court of Military Appeals' decision in *Bourchier* and our decision

in *Perez-Pagan* to be controlling in the instant case.

The adjudged sentence included a fine of $25,000.00. Appellant contends that any fine adjudged in the military is arbitrary, capricious and not a legally prescribed punishment, as there are virtually no guidelines for imposing fines and no limit on the amount an individual can be fined by general court-martial.

 Congress gave to the President the authority to prescribe maximum limits of punishment which a court-martial could adjudge. Article 56, Uniform Code of Military Justice, 10 U.S.C. § 856. Pursuant to this authority the President established in paragraphs 126*h*(3) and 127*c*, Section B, general guidelines concerning the imposition of fines. While the authority of special and summary courts-martial with respect to fines is limited, no such limitation has been imposed upon a general court-martial. The legality of fines as punishment imposed by courts-martial is well established both historically and legally. *See United States v. Cuen*, 9 U.S.C.M.A. 332, 26 C.M.R. 112 (1958). The provision that a fine normally should not be imposed unless there was unjust enrichment as a result of the offense of which the accused was convicted is directory and not mandatory. *United States v. Cuen, supra; United States v. Kehrli*, 44 C.M.R. 582 (A.F.C.M.R. 1971). The type of offenses of which the appellant was convicted are certainly within the guidelines of the Manual provision. That the amount of the fine exceeded the amounts involved in offenses of which appellant was convicted is of no consequence. We do not consider the fine imposed as excessive, arbitrary or capricious. *See United States v. Ashley*, 48 C.M.R. 102 (A.F.C.M.R. 1973).

 Relying principally upon paragraphs 30*g* and 33*h* of the Manual for Courts-Martial, United States, 1969 (Revised edition), appellant asserts that he was denied due process by the Government's failure to try all known charges against him in one tribunal. At the time of this trial he was under indictment by a federal grand jury in the State of California.

The Manual provisions requiring the joinder of all charges at a single trial are inapplicable to the circumstances of the instant case. There has been only one military trial and all military charges have been referred thereto. These Manual provisions have never been interpreted as requiring that separate military and federal charges must be consolidated for trial before the same tribunal even assuming there may be concurrent jurisdiction over all the offenses, nor do we believe they were so intended to apply. In addition to jurisdictional limitations, any number of valid reasons may justify separate Governmental action for offenses arising out of the same general course of conduct. Even if such were not the case, the appropriate remedy should be sought at the subsequent and not the initial proceedings. The fact that appellant's alleged conduct was the subject of investigation by several Governmental agencies, does not in and of itself reflect an oppressive design, as alleged. It is but the legitimate result of conduct which, because of its very nature, was the subject of national attention and within the investigative interest and responsibility of different Governmental agencies. We find no merit to appellant's allegation of oppressive design in the manner in which the Government proceeded against him.

 The United States Supreme Court in *Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974), held that Article 134, Uniform Code of Military Justice, was not unconstitutionally vague under the Due Process Clause of the Fifth Amendment. That holding is dispositive of appellant's allegation concerning the constitutionality of Article 134. The offense of graft which was placed under Article 134 is well established in military law and appellant could have no doubt that the particular conduct in which he engaged was punishable.

 Appellant asserts that the post-trial review was incomplete, erroneous and misleading. Most of the deficiencies alleged concern omissions in the summarization of

the evidence. We have carefully considered each complained of deficiency and find them to be either without merit or the deficiency to be insignificant and unlikely to substantially affect the convening authority's action, particularly when the review is considered as a whole. *See United States v. Samuels,* 22 U.S.C.M.A. 238, 46 C.M.R. 238 (1973). The review consists of 49 pages, approximately 25 of which contain the summary of the evidence presented. When the length of the record and the number of exhibits are considered, it is apparent that even given the length of the review the staff judge advocate had to be selective in determining the matters to be placed in the review. We do not find that he abused his discretion in this regard. *See United States v. Cash,* 14 U.S.C.M.A. 96, 33 C.M.R. 308 (1963).

█ Appellant asserts that the staff judge advocate's comment that the judge had ruled erroneously in holding the two specifications of Charge I multiplicious for sentencing purposes was improper. While the ruling of the judge on the multiplicity issue was a proper subject for inclusion in the review, the comment of the staff judge advocate as to his opinion of the legality of the ruling was unnecessary. He correctly advised the convening authority that he was bound by the judge's ruling and correctly reflected the maximum confinement as being eight years as a result of that ruling. Even if improper, this discussion did not prejudice the appellant. The sentence contained no confinement and certainly the discussion as to whether the proper maximum was thirteen or eight years must have appeared academic.

█ The trial defense counsel requested that a copy of the review be furnished to him for possible rebuttal prior to submission to the convening authority. The staff judge advocate correctly determined that since no adverse matter from outside the record was contained in the review there was no legal requirement to honor the request. Paragraph 85*b,* Manual for Courts-Martial, United States, 1969 (Revised edition). Appellant's request that we consider making it a requirement that such requests be honored has been accomplished by *United States v. Goode,* 23 U.S.C.M.A. 367, 50 C.M.R. 1, 1 M.J. 3 (1975). As the rule stated therein is prospective only, it did not apply to this case.

We have determined that the review was adequate and afforded the convening authority a fair summary of the extensive evidence and provided the convening authority with adequate guideposts by which to determine anew the guilt or innocence of the appellant. *See United States v. Smith,* 23 U.S.C.M.A. 98, 48 C.M.R. 659 (1974).

Appellant asserts that the cumulative effect of the errors and irregularities occurring during the trial deprived him of a fair trial. *United States v. Lowery,* 19 U.S.C.M.A. 245, 41 C.M.R. 245 (1970); *United States v. Dolan,* 17 U.S.C.M.A. 476, 38 C.M.R. 274 (1968). We disagree. Most of the alleged errors and irregularities have been individually discussed herein and found to be without merit. The few errors found were held to be nonprejudicial. In this case there was neither the blatant errors of *Dolan, supra,* nor the compounding of errors found in *Lowery, supra.*

The trial of this case extended over a period of approximately ten months from the initial Article 39(a) session and consumed a total of approximately 25 trial days. The case was vigorously presented by counsel for both sides who always exhibited a high degree of professionalism throughout the proceedings despite the obvious demands of a case of this magnitude. Both counsel and the judge are to be commended.

After careful analysis and consideration of each of the errors assigned, we are satisfied that the appellant received a fair trial and that the evidence amply supports the findings of the court-martial. The sentence is appropriate.

The findings of guilty and the sentence are affirmed.

Senior Judge BAILEY and Judge JONES concur.