UNITED STATES, Appellee

v.

Second Lieutenant Robert E. FINLAY, SSN 570–94–4652, United States Army, Appellant.

CM 437254.

U. S. Army Court of Military Review.

27 Nov. 1978.

Colonel Edward S. Adamkewicz, Jr., JAGC, Major Benjamin A. Sims, JAGC, Major D. David Hostler, JAGC, and Captain William B. Ramsey, JAGC, were on the pleadings for appellant.

Colonel Thomas H. Davis, JAGC, Lieutenant Colonel R. R. Boller, JAGC, Major Michael B. Kennett, JAGC, and Captain Carl F. Meyer, Jr., JAGC, were on the pleadings for appellee.

Before FULTON, TALIAFERRO and WATKINS, Appellate Military Judges.

OPINION OF THE COURT

FULTON, Senior Judge:

The appellant, Second Lieutenant Robert E. Finlay, B.S., U.S.M.A.1976, was charged with unauthorized absences from

29 July to 29 August 1977 and from 15 November 1977 until 17 March 1978, in violation of Article 86, Uniform Code of Military Justice (U.C.M.J.), 10 U.S.C. § 886 (1976). At his request, he was tried by a court comprised of a military judge without court members. He pleaded guilty in return for the convening authority's promise to approve no sentence greater than a dismissal from the service, confinement for four months, total forfeitures for four months, and "any fine which may legally be adjudged." The judge sentenced him to dismissal, confinement for two months, total forfeitures, and "to pay the United States a fine of $30,000." The convening authority approved the sentence. The sole issue raised on this appeal is whether the fine is an appropriate sentence.[1]

Our responsibility to determine whether a sentence is appropriate and to reduce a sentence that is not fair and just is well established. *United States v. Johnson,* 12 U.S.C.M.A. 640, 643, 31 C.M.R. 226, 229 (1962); *United States v. Cavallaro,* 3 U.S.C.M.A. 653, 14 C.M.R. 71 (1954); *see also United States v. Lanford,* 6 U.S.C.M.A. 371, 376–79, 20 C.M.R. 87, 92–95 (1955).

Military courts, unlike civilian criminal courts, may impose forfeitures of pay as punishment. Fines play a somewhat different role in the military scheme of punishment; maximum limits are not specified for particular offenses as is commonly the case in civilian penal statutes. *Cf. United States v. Schultz,* 1 U.S.C.M.A. 512, 530, 4 C.M.R. 104, 122 (1952) (fine approved greater than authorized in related civilian jurisdiction). Therefore fines generally have been con-

sidered appropriate only when the convicted person has been unjustly enriched, as indicated by the Manual provision previously discussed, or when the Government has incurred a loss as the result of the accused's defalcation. *United States v. Cuen,* 9 U.S. C.M.A. 332, 336–37, 26 C.M.R. 112, 116–17 (1958); *see* U. S. War Dept., Technical Manual 27–255, paragraph 125b (23 Feb. 1945); *United States v. Everett,* 1 C.M.R. (A.F.) 657, 661–62 (A.F.J.C.1949); Davis, *A Treatise on the Military Law of the United States* (1st ed.1898) 175. In accordance with these views a fine has been regarded as appropriate when the United States suffered a shortage in its accounts, but not when the accused mainly benefitted from training received and favorable personnel actions. *Compare United States v. Larson,* 45 C.M.R. 894 (N.C.M.R.1972), *with United States v. McElroy,* 3 U.S.C.M.A. 606, 14 C.M.R. 24 (1954).

■ It seems clear that the adjudged fine and its amount relate to the circumstance that, although the appellant was educated and paid at Government expense while attending the United States Military Academy, by virtue of his unauthorized absences and dismissal from the Army (a punishment he requested), he would not be fulfilling the five-year military service obligation incurred by his graduation from the Academy. Following the evidence in extenuation and mitigation, the trial judge suggested that a fine might be appropriate and requested evidence as to the cost of education at the Military Academy during the appellant's attendance. The parties stipulated that a representative of the Academy

1. There is no dispute that the fine as such and its amount were lawfully adjudged. The only relevant potential restriction on the court's sentencing authority under Article 18, U.C.M.J., 10 U.S.C. § 818 (1976), is the following observation in the Presidentially-prescribed Manual for Courts-Martial:

[A] fine normally should not be adjudged against a member of the armed forces unless the accused was unjustly enriched as the result of the offense of which he is convicted. Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 126h(3). Unau-

thorized absence is not an offense contemplated as resulting in unjust enrichment. *United States v. Martinez,* 2 M.J. 1123, 1124 (C.G.C.M. R.1976); *cf. United States v. Gabriel,* 3 C.M.R. 407 (N.B.R.1952) (court evidently failed to distinguish between fine and forfeitures). However, the quoted provision is only directory, not mandatory. *United States v. Cuen,* 9 U.S.C. M.A. 332, 337 n. 5, 26 C.M.R. 112, 117 n. 5 (1958); *United States v. Higdon,* 2 M.J. 445, 456 (A.C.M.R.1975); *United States v. Kehrli,* 44 C.M.R. 582, 584 (A.F.C.M.R.1971).

would testify that the four-year cost per graduate of the Class of 1976 was $110,000.[2]

Conceding that the appellant presumably will derive future benefit from the education obtained at Government expense, and that his misconduct and attitude make it impractical to hold him to the service obligation incurred by his graduation from the Academy, we nevertheless doubt that a fine designed to recoup for the Government a share of the educational cost is appropriate in this case. We note significant mitigating circumstances. There is no hint of fraud or bad faith in the appellant's completion of the course at the Military Academy despite the fact that his apprehensions concerning military service can be traced to his third (junior) year there. His completion of the course despite his misgivings can as well be traced to the subtle, and perhaps unconscious, influences of his military family background and the urging of his advisers at the Academy—both well-intentioned, but, as may now be seen, inappropriate. Neither can the appellant's unauthorized absences be solely ascribed to an intent to shirk service. A shattered marriage and other personal difficulties commonly associated with absenteeism were major contributing if not dominant factors. While this does not make the offenses less reprehensible, it suggests a different basis for punishment.

We do not hold that a fine is inappropriate punishment in this case. We hold only that, taking into account the entire record, a fine measured in relation to the assumed cost to the Government of the appellant's education, training, or experience is inappropriate.[3] We will, therefore, reduce the fine to an amount regarded as appropriate on the entire record to fulfill the other purposes of punishment.

The findings of guilty are affirmed. After considering the entire record, the Court affirms only so much of the sentence as provides for dismissal from the service, confinement at hard labor for two months, forfeiture of all pay and allowances, and a fine of $2,000 to be paid to the United States.

WATKINS, Judge, concurring:

I concur but would address in greater detail one or two matters touched upon in the well-reasoned opinion of Senior Judge Fulton. Notwithstanding the absence of statutory or regulatory authority sanctioning the recoupment under these circumstances of the cost of Government-financed undergraduate education, the record of trial clearly reflects an extraordinary, and in my view inappropriate, preoccupation on the part of certain parties to the trial with the imposition of a fine to serve this purpose.[1] During the sentencing phase of the trial, for instance, the military judge specifically

2. Without conceding the accuracy of this figure, we will not speculate as to how it was computed, much less how the amount of the fine ($30,000) was arrived at.

3. We note that, besides dismissal from the service for criminal conduct, there are other situations in which the United States does not receive quantitative (much less qualitative) satisfaction of the service obligation incurred through attendance at the Academy. So far as we are aware, neither the Executive nor the Congress has yet seen fit to require or authorize recoupment of the educational costs involved.

1. In *United States v. Standard Oil Company,* 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947), a civil case tried before the enactment of the Medical Care Recovery Act, 42 U.S.C. §§ 2651–2653, the Supreme Court of the United States was asked, in the absence of legislation

by Congress on the subject, to make new law regarding the right of the Government to recover for the loss of a soldier's services. In refusing to do so, Justice Rutledge, speaking for all but one member of the Court, clarified any misconceptions concerning which branch of the Government had responsibility for remedial action, if any: "Whatever the merits of the policy, its conversion into law is a proper subject for congressional action, not for any creative power of ours. Congress, not this Court or the other federal courts, is the custodian of the national purse." He reiterated the point in the concluding sentence of the opinion: "Until [Congress] acts to establish the liability, this Court and others should withhold creative touch." Recognizing fully the distinction between a civil remedy and a criminal sanction, the quoted language would nonetheless appear to be apropos here.

invited counsel to stipulate "concerning the approximate cost per year of United States Military Academy students during the period '72 through '76." The trial judge further indicated that such a stipulation would preclude the necessity of the bench finding its own witnesses to testify on this subject. Not surprisingly, the requested stipulation was quickly obtained and placed before the judge.[2] During argument on sentence, the trial defense counsel contended that in the sense of the Manual for Courts-Martial the AWOL charges did not involve unjust enrichment and, for that reason, the imposition of a fine was not appropriate. The argument of the trial counsel was somewhat less temperate in this regard and called for, in addition, to dismissal, a substantial fine. Repeatedly, it was argued that this was "a clear case of unjust enrichment" and that such a fine was appropriate to satisfy the "debt" owed "to society" and "to the American taxpayer" for "four years of the finest education available in the United States." In this context, there can be little doubt that at least the monetary portion of the sentence was substantially influenced by the judge-adduced stipulation, and resulting argument of counsel, concerning the cost of appellant's federally-funded undergraduate education. This Court's action in reducing the amount of the fine from $30,000 to $2,000 adequately speaks to the appropriateness, in relation to the offenses of which appellant was convicted, of the figure originally arrived at by the trial judge.[3] Regarding proper argument by counsel under such circumstances, attention is invited to that portion of paragraph 6.1(b), *American Bar Association Project on*

*Standards for Criminal Justice: Standards Relating to The Prosecution Function and The Defense Function* (Approved Draft, 1971) which provides that "[w]here sentence is fixed by the judge without jury participation, the prosecutor ordinarily should not make any specific recommendation as to the appropriate sentence, . . . ." Because this provision is not clearly inconsistent with the Uniform Code of Military Justice, the Manual for Courts-Martial, or applicable departmental regulations, it is, by the terms of paragraph 2–32, Army Regulation 27–10 (26 November 1968, as changed), applicable to counsel in Army courts-martial proceedings.

TALIAFERRO, Judge, dissenting:

I cannot agree to such a drastic reduction of the amount of the fine herein imposed, on the theory that it is inappropriate, especially in light of the relatively insignificant impact other elements of the sentence have had or will have on the appellant in this case. From the appellant's attitude as reflected throughout the record, it is obvious that he wanted nothing more than to be out of the Army and free of his obligation to the United States. The dismissal was a part of his plea bargain, and a means to the end which he sought, thus the dismissal becomes more appeasement than punishment. Total forfeiture of pay and allowances, normally considered a severe element of punishment, had no effect in this case, since the appellant's request for excess leave (without pay) was granted prior to the time the forfeiture would have become

2. The court-martial, military judge alone, recessed for this purpose at 1520 hours, 19 April 1978. At 1550 hours, 19 April 1978, the court reconvened to consider what was termed a stipulation of expected testimony of a major assigned to the Office of The Adjutant General at the United States Military Academy. In its entirety, the stipulated testimony was as follows: "The approximate cost to educate a member of the Class of 1976 for the 4 year period was $110,000.00. This amount is computed by dividing the total expenditures on the class for the four year period by the number of cadets actually graduating with the class. The

Class of 1976 started with 1375 cadets, 832 graduated in 1976."

3. Aside from the residual fine in the amount of $2,000, and as indicated in the decretal paragraph of Senior Judge Fulton's opinion, left unaffected by this decision are the provisions of the adjudged sentence providing for dismissal from the service, confinement at hard labor for two months, and forfeiture of all pay and allowances. The record of trial also discloses that appellant was in pretrial confinement for slightly over a month.

effective,[1] hence the forfeiture was never executed. The amount of confinement adjudged and approved was slightly more than one-third the total length of the unauthorized absences for which the appellant was convicted[2] and was only one-twelfth the amount of confinement authorized in the Table of Maximum Punishments.[3] The amount of confinement actually served was even less.[4] Thus, the only significant element of the sentence in this case is the fine. To reduce that fine by over 93 percent is to render it no more than a token punishment, leaving it far outweighed by the benefit derived by the appellant in being relieved of his obligation to serve.

Conspicuously absent from the limitations placed by the President upon punishments[5] is any limitation upon a fine imposed by a general court-martial. I believe this to be more than mere oversight, and assume that the reason for imposing no limitation upon the fine, was to allow that element of punishment to be suited to the amount of unjust enrichment, as in this case. The majority sees the imposition of the fine as an attempt to recoup a debt owed the government. I see it as a punishment for having derived, as a result of criminal conduct, a very substantial benefit at the cost of the taxpayer, whether that conclusion is mathematically arrived at by considering the cost of the education, as did the military judge, or by considering the benefit to the appellant in not having to serve his obligated tour of duty, or the lifelong benefit of having received the education, or both. While I agree that there is no legal authority for recoupment of costs such as this by fine, neither do I find any wrong in considering relevant costs to the government, or benefit to the appellant, in the assessment of a fine as punishment.

I would affirm a sentence which included at least a substantial portion of the approved $30,000 fine, if not all, in accordance with the terms agreed to by the appellant in his guilty plea bargain.

---

1. The sentence was approved by the convening authority on 28 June 1978. Excess leave had been granted on 8 June 1978.

2. The sentence, as approved, included confinement for two months. Appellant's absences totalled 153 days.

3. Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 127c.

4. Sentence was adjudged on 19 April 1978. Excess leave was granted 50 days later, on 8 June 1978.

5. Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 126h (3) and Section B, paragraph 127c.