UNITED STATES, Appellee,

v.

Specialist Four William H. HANCE, SSN
226–74–1289, United States
Army, Appellant.

CM 438558.

U. S. Army Court of Military Review.

31 Oct. 1980.

Major Robert D. Ganstine, JAGC, argued the cause for the appellant. With him on the brief were Colonel Edward S. Adamkewicz, Jr., JAGC, Lieutenant Colonel John F. Lymburner, JAGC, Major Grifton E. Carden, JAGC, and Captain Peter A. Nolan, JAGC.

Captain Michael C. Chapman, JAGC, argued the cause for the appellee. With him on the brief were Colonel R. R. Boller, JAGC, Major Ted B. Borek, JAGC, Captain Brian X. Bush, JAGC, Captain Glenn D. Gillett, JAGC, and Captain Paul G. Thomson, JAGC.

Before RECTOR, CARNE and O'DONNELL, Appellate Military Judges.

### OPINION OF THE COURT

O'DONNELL, Judge:

On the sixth day of September 1977, the nude body of Private First Class Karen Hickman was found on the military reservation at Fort Benning, Georgia. Her clothing was discovered on the first of October of that year as the result of an anonymous telephone call to the military police. Several months later, on the third of April 1978, the military police received a telephone call from a person identifying himself as a member of the "Forces of Evil." The caller stated that the body of a woman named Irene could be found on one of the Fort Benning ranges. A search of the area resulted in the discovery of a practically-nude body of a woman later identified as Irene Thirkield, a civilian resident of nearby Columbus, Georgia. On the following day, two criminal investigators, Special Agent Richard F. Fox and Special Agent Marvin D. Besson, located the appellant at his unit and brought him to their office where he eventually confessed to the killing of both women. At his subsequent court-martial, the appellant was convicted of two specifications of premeditated murder and sentenced to a dishonorable discharge, total forfeitures, confinement at hard labor for life, and reduction to the lowest enlisted grade. The convening authority approved the sentence.[1]

After trial, the defense counsel petitioned the convening authority to disapprove the Hickman charge and to reduce the Thirkield charge to unpremeditated murder. In support of his petition, he offered statements from several court-martial members. Five of the nine members sitting on the

---

1. Hance was also convicted by a Georgia court of killing Gail Jackson, a local civilian. He received the death sentence for this offense.

court signed individual unsworn statements in which they stated that the evidence presented at trial "was insufficient to convince me beyond a reasonable doubt that SP4 Hance killed PVT Karen Hickman." Four of these members also signed unsworn statements in which they stated that the evidence "was insufficient to convince me that SP4 Hance was mentally competent to premeditate murder." The staff judge advocate referred to the petition in his post-trial review without further comment. The convening authority took no direct action on the petition, although, as noted, he did approve the sentence as adjudged, thereby impliedly approving the findings.

■ The military follows the general rule that "testimony of jurors will not be received to impeach their verdict, with respect to matters which essentially inhere therein. . . ." *United States v. Bourchier,* 5 U.S.C.M.A. 15, 27, 17 C.M.R. 15, 27 (1954). Exceptions may be made "where extraneous prejudicial information was improperly before the jury or where outside influences were improperly brought to bear on the jury. . . ." *United States v. Higdon,* 2 M.J. 445, 455 (ACMR 1975). As there is no allegation of such extraneous influences, we decline to consider these statements. *See United States v. West,* 23 U.S.C.M.A. 77, 48 C.M.R. 548 (1974), and cases cited therein. *See also,* Rule 606(b), Military Rules of Evidence.

■ The appellant also contends, as he did at trial, that his several written and oral statements were inadmissible as the product of an illegal apprehension. Statements obtained as a result of an illegal arrest are violative of the Fourth Amendment and inadmissible as "fruit of the poisonous tree." *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Not all evidence obtained following an illegal arrest is inadmissible. As the Court noted in *Wong Sun,* the exclusionary rule is inapplicable if the Government learned of the evidence from an independent source or if the connection between the illegal arrest and the challenged evidence has become ' "so attenuated as to dissipate the taint." '

*Id.* at 487, 83 S.Ct. at 417, quoting *Silverthorne Lumber Co. v. United States,* 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920). *See Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980).

Our analysis then must focus primarily on three areas of concern: was the appellant apprehended within the meaning of the Fourth Amendment; if so, was the apprehension supported by probable cause; and, assuming an illegal apprehension, was the taint sufficiently dissipated to permit use of the challenged evidence at trial.

## I

■ An apprehension, which is the military analogue of a civilian arrest, is "the taking of a person into custody." Article 7(a), Uniform Code of Military Justice, 10 U.S.C. § 807(a). Although it may be effected by "clearly notifying the person to be apprehended that he is thereby taken into custody" (paragraph 19 c, Manual for Courts-Martial, United States, 1969 (Revised edition)), it is the substance of the surrounding circumstances that controls rather than the form. *See United States v. King,* 42 C.M.R. 1004, 1006 (AFCMR 1970).

■ In the instant case, Agent Fox testified that he "apprehended Specialist Hance as a suspect in the murder of Irene Thirkield." He so advised the appellant and told him to accompany him to his office. The appellant was not free to leave without permission from Fox.

Special Agent Besson provided a somewhat different version of the initial meeting with the appellant on 4 April. According to Besson, he and Fox told the appellant that they "wanted to talk to him about the two women that had been killed downtown, and we asked him if he would come with us to our office and he agreed." On cross-examination, however, Besson stated that he and Fox took the appellant into custody and that he was not free to leave.

Under the circumstances we are satisfied that the appellant was apprehended within the meaning of the Fourth Amendment.[2]

## II

We turn then to the question of probable cause. An arrest or seizure under the Fourth Amendment must be founded on probable cause. *Wong Sun v. United States, supra.* The military equivalent of probable cause is found in Article 7(b) of the Code.[3]

The facts and circumstances relied on by the Government at trial as expressed by Agent Fox were essentially two-fold. The first and most immediate was that on 3 April 1978 Fox received word that the appellant had been seen in a bar with Irene Thirkield on the night she disappeared. The second related to the appellant's previous dealings with the military police. On the sixth of December 1977, the appellant voluntarily came forward and informed the military police authorities that he had overheard two or three Blacks in a club at Fort Benning discussing the death of a female soldier. A few weeks later, he informed the military police that some Blacks walked into a club where he was and immediately walked out. He neither saw nor heard anything significant at that time and received no threats from anyone. In the middle of January, Fox met with the appellant to see if he had received any further information. The appellant indicated that he had not. At that time, the appellant's fingerprints were taken with his consent.[4] Fox testified that he believed he had probable cause to apprehend the appellant.[5]

We are not satisfied that the evidence presented by the Government was sufficient to warrant a prudent person in concluding that the appellant had committed an offense. The information certainly warranted additional questioning but fell short of establishing probable cause to arrest the appellant.[6]

## III

We turn then to the question of whether the taint of the illegal apprehension was dissipated.

The appellant was taken to the CID office at approximately 1330 hours on 4 April. He was immediately informed of his right

2. The Government's position at trial was that there was an apprehension based on probable cause. On appeal, however, the Government contends *inter alia* that the appellant was not apprehended within the meaning of the Fourth Amendment but voluntarily accompanied the agents to the CID office.

3. "Any person authorized under regulations governing the armed forces to apprehend persons subject to [the Code] or to trial thereunder may do so upon reasonable belief that an offense has been committed and that the person apprehended committed it." *See Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964).

4. Fox stated in response to a question that the appellant was not a suspect at this time. Fingerprints were being taken routinely from "anyone that was connected in any way with the case."

5. Agent Besson, on the other hand stated that he did not believe there was probable cause to apprehend the appellant on 4 April. Besson's position seems to be that there was no apprehension but that the appellant voluntarily accompanied the agents to the CID office. This also was the basis for the judge's ruling admitting the statements as reflected in his special findings.

6. The Government would have us consider a handwritten statement by the appellant authorizing the taking of voice samples. In that statement (Prosecution Exhibit 8), which was dictated to the appellant by Agent Besson, there appears the following: "I have been informed by CID agent Besson that he had received information that I have made telephone calls concerning two Columbus women that has [sic] been killed." The Government points out that the previous day the appellant's company commander and first sergeant identified his voice from a recording of the anonymous telephone call informing the authorities of the location of Irene Thirkield's body. Inexplicably, this information was not presented by the Government on the issue of probable cause. The statement in Prosecution Exhibit 8 cannot be considered by us for this purpose. It was not offered for its truth and thus has no relevance as to probable cause. Even if it had been offered for its truth, it is hearsay as to what Besson knew and as such incompetent evidence.

to counsel and of his right to remain silent, both of which he waived. He was then questioned about the Thirkield death until about 2200 hours that night. Initially, the appellant stated that he met Miss Thirkield at a local bar on 15 March and took her to a club on the Fort Benning reservation. He added that he later left her and went home by himself. During this interrogation, the appellant provided Agent Besson with handwriting exemplars. He then admitted writing several letters to the Columbus police authorities and one to a local newspaper. These letters were purportedly written on behalf of the "Forces of Evil" concerning Irene Thirkield and Gail Jackson. He claimed that the "Forces of Evil" compelled him to write the letters. The appellant then told his interrogators that he was coerced by the "Forces of Evil" to pick up Irene Thirkield and deliver her to them on the evening in question. The appellant also admitted making several telephone calls to the military police, again claiming that he was forced to do so by the "Forces of Evil." After Fox finished questioning him that day, the appellant was interviewed by agents of the Federal Bureau of Investigation and members of the Columbus police force. He was then placed in bachelor enlisted quarters under guard for the night.

The following morning the criminal investigators, after first warning him of his rights, continued questioning the appellant. At this time, he admitted being present when Irene Thirkield and Gail Jackson were killed, but denied that he assisted in the killings. However, after a lunch break, the appellant admitted killing the two women himself. He also admitted that there was no such organization as the "Forces of Evil." His confession was reduced to writing and received in evidence over objection at his trial.

The agents, after appropriate warnings, then questioned the appellant about the Karen Hickman killing. He first stated that he overheard two men discussing the killing but was told to keep his mouth shut. Then, according to the appellant, he was told to call the military police and inform them of the location of Hickman's clothing. This statement was reduced to writing and received in evidence over objection. The questioning on 5 April ended at 1800 hours. The appellant was returned to the same room where he remained for the night under guard.

The following day, after being warned of his rights, the appellant admitted killing Karen Hickman. This statement was also reduced to writing and received in evidence over objection. After confessing to the Hickman killing, the appellant took the agents to the scene of the crime and showed them where he had thrown her clothing.

In *Brown v. Illinois, supra,* the Supreme Court reaffirmed the principles announced in *Wong Sun* and enunciated several factors to be considered in determining whether a confession has been obtained by exploitation of an illegal arrest. "The temporal proximity of the arrest, . . . the presence of intervening circumstances, . . . and, particularly, the purpose and flagrancy of the official misconduct are all relevant. And the burden of showing admissibility rests, of course, on the prosecution." *Brown v. Illinois,* 422 U.S. at 603–04, 95 S.Ct. at 2261–62 (Citations and footnotes omitted.).[7] Neither *Wong Sun* nor *Brown* established a "but for" or *per se* rule. Rather, the issue must be decided on the facts of each case. It must be emphasized that in this area we are dealing with the protection of Fourth Amendment rather than Fifth Amendment rights. "Thus, even if the statements in this case [are] found to be voluntary under the Fifth Amendment, the Fourth Amendment issue remains." *Id.* at 601–02, 95 S.Ct. at 2260–61.[8]

---

7. The Court also noted that "*Miranda* warnings are an important factor" in this equation. *Id.* Of course, if *Miranda* warnings are not given when required, the resulting confession is inadmissible on *Miranda* grounds without regard to Fourth Amendment considerations. *See* note 8, *infra.*

8. Voluntariness is a threshold requirement. If the statements are determined to be involuntary under the Fifth Amendment, the Fourth

The factor of temporal proximity contemplates that the passage of time between the arrest and the confession diminishes the probability that the confession is tainted. In the instant case, the appellant did not confess until the second day. However, he made several admissions during the initial stages of the interrogation. In fact, immediately upon being apprehended, he said, "I will tell you about the girl." Moreover, a significant passage of time, depending on the circumstances, can increase rather than diminish the likelihood of a tainted confession. As Justice Stevens noted in his concurring opinion in *Dunaway v. New York*, 442 U.S. at 220, 99 S.Ct. at 2260:

> The temporal relationship between the arrest and the confession may be an ambiguous factor. If there are no relevant intervening circumstances, a prolonged detention may well be a more serious exploitation of an illegal arrest rather than a short one.

In this case the apprehension was exploited in that the interrogation was prolonged and the appellant was not free to leave. Indeed, he was confined to bachelor enlisted quarters for two nights.[9]

As to the purpose and flagrancy of the police action, this factor was important in *Brown* because of the obvious impropriety of the arrest in that case. Here, although the apprehension was not flagrant, it was investigatory in nature, a significant consideration in *Brown*.[10] This "purpose and flagrancy" factor assumed less importance in *Dunaway* where the police apparently acted in good faith and the arrest was not flagrant.[11] The Court in that case attached more significance to the lack of intervening circumstances. In the instant case, there were no significant intervening circumstances which would attenuate the taint. To the contrary, as noted, the taint was exploited by the prolonged interrogation and the irregular confinement of appellant.

The Government has failed to establish the legality of the appellant's apprehension and has not demonstrated that this taint was dissipated. The resulting confessions and other derivative evidence therefore were inadmissible.[12]

As the unaffected evidence is insufficient to support the findings of guilty, the

Amendment question is never reached. We are satisfied that the appellant's statements meet the requirements of the Fifth Amendment and Article 31 of the Code, 10 U.S.C. § 831 and therefore are voluntary. The giving of Article 31 and *Miranda* warnings, however, does not operate *per se* to remove the taint from an illegal arrest. *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

9. When asked why the appellant was not placed in the stockade after the first day's interrogation, Agent Besson remarked that he did not consider they had sufficient evidence for that purpose and they feared that the appellant, once he had been confined in the stockade, would refuse to cooperate in answering questions.

10. In *Brown*, the Court noted at p. 605, 95 S.Ct. at p. 2262:

> The impropriety of the arrest was obvious; awareness of the fact was virtually conceded by the two detectives when they repeatedly acknowledged, in their testimony, that the purpose of their action was "for investigation" or for "questioning." ... The arrest, both in design and in execution, was investigatory. The detectives embarked upon this expedition for evidence in the hope that something might turn up.

11. *See United States v. Williams*, 622 F.2d 830 (5th Cir. 1980), where the Fifth Circuit En Banc adopted a new rule for that circuit whereby "evidence is not to be suppressed under the exclusionary rule where it is discovered by officers in the course of actions that are taken in good faith and in the reasonable, though mistaken belief that they are authorized." 622 F.2d 840. This is the position taken by the two dissenting justices in *Dunaway* and inferentially rejected by the majority and concurring justices.

12. The Government argues that *Dunaway*, which was decided during the *Hance* trial, should not be applied retroactively. Although there is authority to the contrary (e. g., *United States v. Tucker*, 610 F.2d 1007 (2d Cir. 1979)), we need not reach that issue. The only new issue resolved by *Dunaway* was "the legality of custodial questioning on less than probable cause for a full-fledged arrest." *Dunaway v. New York*, 442 U.S. at 202, 99 S.Ct. at 2251 (1979). That issue is not present in this case. The basic principles announced in *Wong Sun* and *Brown* remain unchanged in *Dunaway* and are controlling here.

conviction must be reversed. This would normally require dismissal of the charges. However, it appears that at the time of the apprehension the arresting officers were aware of other evidence, unaccountably not introduced by the Government, tending to show the existence of probable cause. In an exhibit to its appellate brief, the Government presented information showing that on the day before the appellant was apprehended Fox and Besson were informed that the appellant's company commander and the first sergeant identified him as the person who made the telephone call concerning the location of Irene Thirkield's body. See note 6, supra. Under the circumstances, a rehearing may be ordered at which the question of probable cause for the apprehension may be further developed. See United States v. Davenport, 14 U.S.C. M.A. 152, 33 C.M.R. 364 (1963).

The findings of guilty and the sentence are set aside. A rehearing is authorized.[13]

Chief Judge RECTOR and Senior Judge CARNE concur.

---

**13.** We note that the military judge over defense objection used the reasonable doubt instruction held to be deficient in United States v. Salley, 9 M.J. 189 (CMA 1980). This deficiency, we are certain, will be corrected at any rehearing.