UNITED STATES, Appellee,

v.

Specialist Five David G. SCHURING, SSN 341–40–0560, United States Army, Appellant.

CM 440977.

U.S. Army Court of Military Review.

16 June 1983.

Harold C. McKenney, Esquire, argued the cause for the appellant. With him on the brief were Colonel Edward S. Adamkewicz, Jr., JAGC, Captain David M. England, JAGC, Captain Edward J. Walinsky, JAGC, and Captain Peter R. Huntsman, JAGC.

Captain Thomas E. Booth, JAGC, argued the cause for the appellee. With him on the brief were Colonel R.R. Boller, JAGC, Lieutenant Colonel John T. Edwards, JAGC, and Captain Patrick M. Flachs, JAGC.

Before O'DONNELL, FOREMAN and WERNER, Appellate Military Judges.

## OPINION OF THE COURT

WERNER, Judge:

Although he pled not guilty to the charge of murdering, without premeditation, Mi Yong Yun, a Korean woman, appellant was convicted by a court-martial composed of members of the lesser-included offense of involuntary manslaughter while perpetrating a battery, in violation of Article 119(b)(2), Uniform Code of Military Justice, 10 U.S.C. § 919(b)(2) (1976). The approved sentence provides for a dishonorable discharge, confinement at hard labor for three years, total forfeitures and reduction to Private E–1.

### I. The Facts

Anchong-ni is a small South Korean village abutting the American military installation of Camp Humphreys. It has a main street traversing the length of the village which terminates at the installation's main gate. The main street is intersected by side streets and alleys where many of the native businesses and dwellings are located. In one such alley (Duffy's Alley) not far from the main gate of Camp Humphreys, there were several business establishments which specialized in providing various forms of nocturnal entertainment for the soldiers of the post.[1] There, soldiers could avail themselves of the opportunity to drink and dance in the company of local "business women" (a euphemism for prostitutes). For those with the inclination and financial resources, other services could be purchased from them with delivery thereof usually forthcoming at a nearby house or hotel.

In an alley on the opposite side of the main street, a mere ninety-second walk from Duffy's Alley, was the Dae Young Hotel. The hotel consisted of about a dozen small rooms surrounding a central courtyard. One could gain entry to the rooms without being observed. The hotel was used by business women for their nocturnal liaisons.

Mi Yong Yun was a business woman who plied her trade in the vicinity of Duffy's Alley. She was known to the villagers of Anchong-ni by the nickname "Crazy Girl" because of her propensity to behave aberrantly in public. Perhaps for that reason and because she did not have a medical clearance certificate from the authorities,

---

1. Though Korean owned, the clubs had anglicized names, i.e., Hamilton Club, Duffy's Club, T Club and Seven Club.

she was barred from working in some of the clubs in Duffy's Alley. On the night of 10 November 1980, Mi Yong Yun was seen soliciting American servicemen near Duffy's Alley and may have brought one of them to her room in the Dae Young Hotel. There, at about 2230 hours, her nude corpse was discovered lying on a bed with a fluorescent light tube in her vagina and a brassiere wound tightly around her neck. Miss Yun had been beaten and strangled.

In November 1980, appellant was a thirty-two year old medical supply specialist who had completed nearly fourteen years of service. He was considered by his supervisors to be a reliable soldier with a reputation for peaceableness. He suffered from chronic alcoholism and, over the previous decade, had experienced blackouts and amnesia and had participated in various alcoholic rehabilitation programs. On the evening of 10 November 1980, appellant visited several of the clubs in Duffy's Alley where, according to him, he drank at least a case of beer and became too intoxicated to remember everything he did that night. He said he was depressed over the deterioration of his marriage. He testified that shortly before the midnight curfew, he went to the installation main gate where he observed the military police checking incoming personnel; someone told him two women had been killed in the village. He claimed to have been concerned about the safety of a business woman he knew who lived near the main gate and went to her house to see if she was all right. He said he told her "a woman was killed."

The business woman, Miss Ae Cha Kim, related a different story. She said that when the appellant came to her house, he behaved strangely and twice said, "I kill woman." He asked to stay for the night but she would not permit it because she already had a client. At first he refused to leave but then said he would do so when it became quiet outside. He appeared concerned about the military police "checking

the GI's" at the main gate. The next day, Miss Kim asked her boss at Duffy's Club, Mr. Kim, to interpret the meaning of the words "I kill woman," as he apparently spoke better English than she. When he told her, she reported the appellant to the Korean police. She also furnished them with a photograph of appellant which she had cut from a larger picture taken of them both a week earlier.

On 14 November 1980, largely on the basis of the information provided by Miss Kim, agents of the Camp Humphreys Field Office of the Criminal Investigation Command (CID) apprehended the appellant for the killing of Miss Yun. During their interrogation, conducted after appellant was warned of and had waived his *Miranda Tempia*[2] and Article 31[3] rights, appellant confessed to strangling Miss Yun to death. A subsequent laboratory analysis by a forensic chemist revealed that a pubic hair taken from appellant matched a hair found on a quilt taken from Miss Yun's hotel room.

## II. *Sufficiency of the Evidence*

■ Appellant contends the evidence is insufficient to establish his guilt beyond a reasonable doubt. We disagree. The government's case rested upon four primary evidentiary pillars: (1) appellant's confession to the CID on 14 November 1980; (2) the testimony of Miss Ae Cha Kim concerning appellant's admissions and behavior on the night of 10 November 1980; (3) a laboratory analysis of a hair found at the scene of the crime showing that it matched a hair sample taken from appellant; and (4) a pathologist's autopsy and report thereof. In opposition to this, the defense brought out evidence tending to exonerate appellant by suggesting that another, unidentified individual was the killer. In spite of the evidentiary conflict, we are satisfied, as were the court members, that, on the basis of the evidence as a whole, appellant is guilty beyond a reasonable doubt.

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *United States v. Tempia,* 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967).

**3.** 10 U.S.C. § 831.

First, we find appellant's confession sufficiently comprehensive and credible to establish all elements of the offense. Specifically, appellant admitted that he met Miss Yun on the night of 10 November 1980, propositioned her and went with her to a local hotel. There, despite his own optimism and Miss Yun's fondling, he was unable to attain an erection. When she laughed at him, he struck her. She then called him a bastard, to which he responded by saying, "All you women are alike," and strangled her. The appellant went to sleep and thereafter awoke to observe Miss Yun's strangled body with the fluorescent light tube in her vagina. He departed the hotel and eventually went to Miss Kim's house where he told her he "killed a girl." Appellant placed the time of the killing at 2210 hours and his departure from the hotel at 2245 hours. We perceive that certain particulars of appellant's confession do not coincide with other, independent evidence introduced at trial. For example, appellant said he danced with the victim at the Hamilton Club when the overwhelming evidence from witnesses proved she never was there. He claimed he used a scarf to strangle her when, in fact, it was a brassiere. He said he left her body on the floor instead of on the bed where it was found. However, we do not consider these and other minor discrepancies to be so significant as to impeach the confession as a whole.

Second, we find that appellant's admission to Miss Kim on the night of Miss Yun's death also establishes his guilt. Besides making the statement, "I kill woman," appellant by his unusual behavior, gave her the distinct impression he was trying to avoid a confrontation with the military police. His behavior, no less than his verbal communication, reflected consciousness of guilt. We find Miss Kim's testimony, which was tested by an aggressive cross-examination, to be consistent, credible and convincing.

Third, we also find the scientific evidence from the forensic chemist to be probative of appellant's guilt. Based upon his expertise, the chemist testified that under standard analytical techniques, where two hairs are found to be similar as to seventy-five percent of their characteristics, they are deemed to be "matched." His finding that a pubic hair taken from appellant matched one taken from the victim's quilt met this analytical test.

Fourth, we do not find appellant's testimony that he confessed in response to coercion by his interrogators to be persuasive. His explanation for confessing involuntarily included the facts that the interrogation was lengthy (six hours), and he was tired, had a headache, was being pressured by his marital problems and simply wanted to get away from the CID. Ostensibly, this induced him to say things he did not believe were true but were what he thought the CID wanted to hear. On cross-examination, however, he admitted he was selective in falsifying the details of the confession and, in general, was simply not credible.

Fifth, witnesses for the government and the defense testified that shortly before Miss Yun was killed, she was seen in the company of servicemen other than the appellant. One of these, an individual wearing brown shoes with white laces, was seen leaving her room in the Dae Young Hotel at about 2200 hours. Appellant contends that this establishes that the unknown individual was the likely killer. We disagree. The record reveals that Miss Yun was killed sometime between 2150 hours, the last time she was seen alive, and 2230 hours, when her body was discovered. The unidentified man in the brown shoes was last seen in her company around 2200 hours. Appellant's whereabouts during this time frame were not known, notwithstanding his testimony that he believed he was in the Hamilton Club. One of the business women there testified appellant left the club at some point during the evening for thirty to forty minutes before returning. It was entirely possible for him to have met and taken Miss Yun to the hotel and to have killed her during this time. Considering the fact he confessed to being at the hotel between 2210 and 2245 hours, we are satisfied, as were the court members, of appellant's guilt beyond a reasonable doubt.

### III. *Speedy Trial*

The appellant contends he was denied a speedy trial under Article 10, Uniform Code of Military Justice, 10 U.S.C. § 810 (1976), and requests dismissal of the charges. We disagree. The military judge determined that the time between appellant's apprehension and trial was 104 days. Twenty-four days were due to a psychiatric evaluation of appellant and were charged to the defense by the military judge. *United States v. McClain,* 1 M.J. 60 (C.M.A.1975); *United States v. Bean,* 13 M.J. 970 (A.C.M. R.1982). In addition, ten days were the result of defense requests for witnesses at the Article 32, Uniform Code of Military Justice, 10 U.S.C. § 832 (1976), investigation. *United States v. Talavera,* 8 M.J. 14 (C.M.A.1979). As the number of days attributable to the government does not exceed ninety, we fail to see how appellant was denied a speedy trial under the first prong of the test set out in *United States v. Burton,* 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971).[4] Moreover, notwithstanding the fact that appellant made a written demand for trial under the second prong of *Burton, supra,* we find that the government's response in bringing him to trial fifteen days later was reasonable. *See United States v. Johnson,* 23 U.S.C.M.A. 397, 50 C.M.R. 279, 1 M.J. 101 (1975).

### IV. *Evidentiary Issues*

#### A. *Inflammatory Photographs*

The appellant argues that two color photographs showing the victim's injuries were so inflammatory as to outweigh their probative value. We disagree. The photographs were limited in number, clinical in nature and relevant to corroborate portions of the appellant's confession and the pathologist's testimony concerning cause of death. Under the circumstances, we hold they were properly admitted. *See United States v. Matthews,* 13 M.J. 501, 518 (A.C.M.R.

1982); *United States v. Tua,* 4 M.J. 761 (A.C.M.R.1977), *pet. denied,* 5 M.J. 91 (C.M. A.1978).

#### B. *Voluntariness of the Confession*

Appellant asserts that his confession should have been suppressed because it was unlawfully obtained through psychological coercion by the interrogating CID agents and was the product of an apprehension not based upon probable cause. We find both assertions unmeritorious.

##### 1. *Unlawful Coercion*

Involuntary pretrial statements made by an accused are inadmissible as evidence of guilt. Mil.R.Evid. 304(a). An involuntary statement is one "obtained in violation of the self-incrimination privilege or due process clause of the Fifth Amendment to the Constitution of the United States, Article 31, or through the use of coercion, unlawful influence, or unlawful inducement." Mil.R. Evid. 304(c)(3). Our concern here is whether the military judge erred in finding that appellant's confession was not unlawfully coerced, influenced or induced by his interrogators. *Culombe v. Connecticut,* 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961). The question is primarily factual, and its answer depends in part on the credibility of the witnesses who testified on the suppression motion. In this regard, we recognize that the military judge saw and heard the witnesses and was in the best position to evaluate their credibility. Article 66, Uniform Code of Military Justice, 10 U.S.C. § 866 (1976).

We find that the military judge's ruling was correct. The evidence presented during the hearing on appellant's motion was limited to the testimony of the interrogating agents as appellant did not testify. Despite a determined effort by the defense to develop inconsistencies or otherwise undercut its reliability, the testimony of the agents was substantially in agreement.

---

4. The government maintains the military judge erred in ruling the delay was 104 rather than 96 days and cites the Court of Military Appeals' holdings in *United States v. Manalo,* 1 M.J. 452 (C.M.A.1976), and *United States v. Roman,* 5 M.J. 385 (C.M.A.1978), in support of its position. We find it unnecessary to resolve these collateral issues in view of our determination that the delay attributable to the government was less than ninety days in either event.

Specifically, they both stated that appellant received proper warnings and waived his rights, and was not threatened, physically harmed, promised rewards, clemency or benefits, or deprived of privileges or necessities. *See* Manual for Courts-Martial, United States, 1969 (Revised edition), Analysis of the Military Rules of Evidence at A18–17. Moreover, they maintained they spoke to appellant in a conversational manner, did not berate him and provided him with food and coffee to build and maintain a rapport. As a result, appellant gradually changed his original denial of guilt into a confession. Under the circumstances, we do not believe that appellant's complaint that the length of the interrogation (six hours) and the agents' act of telling him the information given them by Miss Kim unlawfully coerced his confession.

### 2. *Unlawful Apprehension*

Appellant correctly asserts that a confession obtained as a result of an illegal apprehension is inadmissible. *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *United States v. Hance,* 10 M.J. 622, 624 (A.C.M.R.1980). A lawful apprehension must be based upon probable cause, i.e., the apprehending officials must reasonably believe that a crime was committed and that appellant was the perpetrator. *United States v. Escobedo,* 11 M.J. 51, 53 (C.M.A.1981); *see* Mil.R.Evid. 315(f)(2). Mere suspicion is insufficient. *See United States v. Wynn,* 11 M.J. 536 (A.C.M.R.1981), *aff'd,* 13 M.J. 446 (C.M.A.1982); *United States v. Hance, supra;* Article 7(b), Uniform Code of Military Justice, 10 U.S.C. § 807(b) (1976); Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 19.

It is undisputed that the agents had probable cause to believe that Miss Yun was the victim of a homicide. Appellant asserts only that the agents did not have probable cause to believe he was the perpetrator of the offense as they relied solely on the statement of a Korean prostitute of unknown reliability that appellant had told her, on the night of Miss Yun's death, "I kill woman." This contention fails for several reasons. First, Miss Kim was not an anonymous paid informant of the sort contemplated by *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and *Aquilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). She was a citizen-informant with no discernible reason to falsely implicate appellant; as such, she was "presumptively reliable." [5] *United States v. Land,* 10 M.J. 103, 105 (C.M.A. 1980) (citations omitted); *see United States v. Melvin,* 596 F.2d 492, 496–97 (1st Cir.), *cert. denied,* 444 U.S. 837, 100 S.Ct. 73, 62 L.Ed.2d 48 (1979); *United States v. Burke,* 517 F.2d 377 (2d Cir.1975); 1 Lafave, *Search and Seizure* § 3.4(a) (1978). Second, she twice gave the statement in the presence of American or Korean police, circumstances "likely to have 'a truth-telling effect' upon [her]." *United States v. Land,* 10 M.J. at 105 (citations omitted). Third, she described the underlying circumstances of appellant's confession in particular detail, including the time of his admission to her, which corresponded approximately with the agents' knowledge of when the deceased died, and appellant's nervous demeanor. Miss Kim also produced a photograph of her and appellant together. Accordingly, we find, as did the military judge, that the apprehending agents had probable cause to believe that appellant had murdered Miss Yun.

### C. *Uncorroborated Confession and Admission*

Appellant contends his confession to the CID and admission to Miss Kim were uncorroborated and should therefore not have been considered by the court members to establish his guilt under Military Rule of Evidence 304(g). We disagree. The rule provides that a confession or admission may only be considered as evidence of guilt or

**5.** While Miss Kim was apparently a prostitute, that fact, by itself, does not render her "unreliable." *United States v. Beto,* 86 Ill.App.3d 622, 627, 41 Ill.Dec. 871, 876, 408 N.E.2d 293, 298 (1980).

innocence "if independent evidence, either direct or circumstantial, has been introduced that corroborates the essential facts admitted to justify sufficiently an inference of their truth." The evidentiary burden upon the government requires only that it establish the trustworthiness of the confession or admission. *United States v. Shavers,* 11 M.J. 577 (A.C.M.R.1981), *aff'd,* 13 M.J. 380 (C.M.A.1982) (summary disposition). We hold the government met such burden as the evidence which showed the fact of Miss Yun's death, the physical condition of her body (bruised and garroted), the probable time and place of her death and the likely presence of the appellant at the scene of the crime (his pubic hair) amply verified the essential facts contained in his confession and admission.

### D. *Improper Cross-Examination*

■ Appellant avers he was prejudiced when the military judge erroneously permitted the trial counsel to ask him on cross-examination whether he had told his cellmate in pretrial confinement that "he had killed Crazy Girl." He contends the question was without proper foundation and beyond the scope of direct examination. We hold the question was proper. The governing rule is Military Rule of Evidence 611(b), which provides: "Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The military judge may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination." As the question involved a purported admission by appellant which would have contradicted his exculpatory testimony on direct examination, it affected his credibility. In any event, in view of appellant's denial that he made the statement, he was not prejudiced.

### V. *Challenge for Cause*

■ Appellant contends the military judge abused his discretion by denying a challenge for cause against a court member. We disagree. During voir dire, the court member, Captain Smith, indicated he did not believe that mental pressure alone could force a person to confess falsely to a crime. Subsequently, he explained that he was speaking from personal experience, but that he would be able to evaluate evidence on the matter with an open mind. We find that Captain Smith did not possess an inelastic mental attitude or an unwillingness to follow judicial instructions on this issue and was therefore not disqualified from sitting as a court member. *United States v. Tippit,* 9 M.J. 106 (C.M.A.1980); *United States v. Karnes,* 1 M.J. 92 (C.M.A.1975); *United States v. Parker,* 6 U.S.C.M.A. 274, 19 C.M.R. 400 (1955). Accordingly, the military judge correctly denied the challenge for cause.

### VI. *Illegal Pretrial Confinement*

■ Appellant contends that his pretrial confinement was illegal and that he should have been granted administrative credit for the time he was incarcerated. We recognize that administrative credit may be an appropriate remedy for illegal pretrial confinement. *United States v. Larner,* 1 M.J. 371 (C.M.A.1976). However, under the circumstances present in this case, we find it is not warranted.

Appellant was ordered into pretrial confinement on 14 November 1980. Between then and 9 February 1981, the initial decision to confine him and the subsequent decisions to continue his confinement were reviewed by two judge advocate officers serving as part-time military magistrates.[6] They found sufficient legal and factual reasons for appellant's confinement and its continuation. *See United States v. Heard,* 3 M.J. 14 (C.M.A.1977); *Courtney v. Williams,* 1 M.J. 267 (C.M.A.1976). Subsequently, it was revealed that both officers were performing duties as prosecutors for their respective organizations. Under the regulation by which they were appointed,

---

**6.** *See* Army Regulation 27–10, Legal Services— Military Justice, paragraph 16–4d (Change 17, 15 August 1977).

prosecutors are disqualified from acting as magistrates because they are not "neutral and detached."[7] On 9 February 1981, a military judge, who was not disqualified, examined appellant's case file and determined his continued incarceration was appropriate.

 The military judge found the officers' appointment as magistrates violated the regulation, but that the appellant suffered no prejudice thereby. We hold that his decision was correct. Review of pretrial confinement by a neutral and detached magistrate is not only a regulatory requirement but a constitutional one as well. *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *United States v. Lynch,* 13 M.J. 394 (C.M.A.1982); *United States v. Malia,* 6 M.J. 65 (C.M.A. 1978); *Courtney v. Williams, supra.* Where the review is accomplished by one performing prosecutorial duties, the pretrial confinement may be found illegal and administrative credit granted for the time spent in jail. *United States v. Lynch, supra; United States v. Marler,* 7 M.J. 629 (A.F.C.M.R.), *pet. denied,* 8 M.J. 124 (C.M.A.1979). Whatever illegality may have been engendered as a result of the review initially being conducted, contrary to the regulation, by "non-neutral" prosecutors, it was cured by the subsequent review by a "neutral and detached" military judge who met the regulatory requisites and who determined that there was an adequate basis to confine him.

### VII. *The Interpreter*

 Appellant contends that the military judge erred by allowing a Korean employee of the Camp Humphreys CID to act as an interpreter during the taking of the testimony of Miss Ae Cha Kim and her boss, Mr. Kim, on the grounds of prior participation and translation inaccuracies. Initially, we find that the employee did not previously participate in the case in any disqualifying capacity. Although he worked in the CID office, his principal duty was that of a translator and not as a criminal investigator. He did not talk to any witness in the

case nor did he visit the crime scene. His sole connection with the case was to translate statements provided by the Korean police which were unrelated to the testimony he interpreted at trial. Further, we are satisfied that his translations accurately reflected the witnesses' testimony. Accordingly, this assigned error is without merit.

### VIII. *Miscellaneous*

Finally, appellant contends his constitutional rights were abridged because of alleged prosecutorial delictions involving the failure to provide adequate investigative resources, denial of access to witnesses and concealment of the results of lineups adverse to the government. We find all of these contentions to be without merit.

Accordingly, the findings of guilty and the sentence are affirmed.

Senior Judge O'DONNELL and Judge FOREMAN concur.

7. Army Regulation 27–10, *supra,* paragraph 16–4e (Change 17, 15 August 1977).