UNITED STATES, Appellee,

v.

Private First Class Linus P. ROMEY,
574–54–8369, United States
Army, Appellant.

ACMR 8900465.

U.S. Army Court of Military Review.

15 Nov. 1989.

For Appellant: Captain Jeannine C. Hinman, JAGC (argued), Captain Thomas A. Sieg, JAGC (on brief).

For Appellee: Captain Jonathan F. Potter, JAGC (argued), Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Gary L. Hausken, JAGC, Captain Randy V. Cargill, JAGC, Teresa Pavelko, Intern (on brief).

Before FOREMAN, SMITH and VARO, Appellate Military Judges.

OPINION OF THE COURT

SMITH, Judge:

On 2, 13, 14, and 15 February 1989, the appellant was tried by a general court-martial composed of officer and enlisted members at Fort Ord, California. Contrary to his pleas, the appellant was convicted of sodomy with a child under the age of 16 years and indecent assault, in violation of Articles 125 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 925 and 934 (1982)[hereinafter UCMJ]. The convening authority approved his sentence of a dishonorable discharge, confinement for 20 years, forfeiture of all pay and allowances, and reduction to Private E1.

I

In August of 1988, Mrs. Melanie Romey, mother of the victim, S, discovered blisters around S's anus while teaching her the proper way to bathe. Mrs. Romey immediately brought S to their family doctor, a military physician. The doctor examined the rash, molluscum contagiosum, and called a dermatologist to confirm his diag-

nosis. Because the rash[1] was in the genital area, child abuse was suspected. The doctor asked S if she had been touched by anyone. S responded by saying "No one but daddy."

Appellant was the sole caretaker of his daughter, S (age 8) and son B (age 5), from 1 January through 1 June 1988. For financial reasons, Mrs. Romey worked and lived in Alaska. It was alleged that during this period appellant told his daughter that he would teach her "how not to get pregnant." He forced S to masturbate him until he ejaculated and to perform oral copulation. Appellant inserted his finger in S's vagina and licked her vagina.

At trial, the government called three witnesses, the examining doctor, the victim's mother, and S. The doctor testified in regard to his examination of the rash and S's response, "No one but daddy," to his question, "Has anybody been touching you down there or doing anything?"

S's mother testified as to S's age and that both of her children were living with appellant while she was working in Alaska during the period 1 January through 1 June 1988 (the period of the charged offense).

Prior to S's testimony, trial counsel indicated to the judge that S was reluctant to talk about the charged incidents. S had, in the past, communicated information about the charged offenses by whispering to her mother or a social worker. Another method of communication was for her to draw pictures. It was the trial counsel's opinion that S would not answer directly in court except as to peripheral matters. In an attempt to familiarize her with the courtroom and various participants, S was called and asked questions out of the presence of the court members. The court members then were called and formal questioning began. S answered general questions with little difficulty and identified her father and the place and period of time she lived with her father while her mother was in Alaska. When S was asked, "What are we going to talk about [today]?" she failed to respond. S responded affirmatively when asked if she would like to talk through her mother by "Sort of whisper[ing] the answer in her [mother's] ear."

The military judge received no response when he asked S if she thought she could answer any questions without her mother but directed trial counsel to try without the mother. The witness again answered some preliminary questions but did not respond when asked "Do you remember what daddy was teaching you?" The military judge, without making a formal finding that S needed assistance, directed, over defense objection, that S's mother be brought in.

Mrs. Romey was seated to the right of her daughter and instructed to repeat only the trial counsel's questions and her daughter's answers "without any other words." Thereafter, Mrs. Romey acted essentially as an interpreter with S whispering her answer to her mother who then gave the answer to the court. Shortly after this method began, Mrs. Romey was sworn as an interpreter by the trial counsel. Essentially all answers related to sodomy or indecent assault were thereafter communicated through the mother. The same procedure was used during cross-examination.

Appellant assigns, *inter alia*, the following error on appeal:

APPELLANT'S SIXTH AMENDMENT RIGHT TO CONFRONT THE WITNESS WAS DENIED WHEN THE ALLEGED VICTIM TESTIFIED THROUGH HER MOTHER AND WAS NOT AVAILABLE FOR CROSS-EXAMINATION.

Relying on *Coy v. Iowa*, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988) and *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987)(cases emphasizing the right of an accused to physically confront a witness), appellant argues that the method employed was impermissible because it was possible that Mrs. Romey changed her daughter's answers and

---

1. It was stipulated at trial that the appellant was examined on 9 February 1989 and had no "symptoms or pathology for molluscum contagiosum." Further the court members were instructed by the trial judge that the rash was "not related to any offense charged and cannot be considered when arriving at your decision regarding the offenses charged."

because "his right to confront and cross-examine the true witness against him in a meaningful way was denied." Appellant further "contends that the witness was afforded special 'protections' when no specific finding was made that the witness needed such protection." We disagree.

■ The confrontation clause requires that facts to be established by witnesses be proved "by witnesses who confront him at the trial, upon whom he can look while being tried, whom he is entitled to cross-examine, and whose testimony he may impeach in every mode authorized by the established rules governing the trial or conduct of criminal cases." *Kirby v. United States,* 174 U.S. 47, 55, 19 S.Ct. 574, 577, 43 L.Ed. 890, 894 (1899). In other words, there must be no barrier preventing the victim from viewing an accused or an accused from viewing the victim. An environment must exist that allows the court members to evaluate the effect of confrontation on the accused and the witness. We find under the facts of this case that appellant was not denied his right of physical confrontation. The procedure used afforded appellant that right throughout both direct and cross-examination and the confrontation was in clear view of the court members. The military judge made no "specific" finding that S required the assistance of her mother, however, his directions to the trial counsel and questioning of S indicate that he proceeded with the objected to method only after concluding that S would not be able to testify without her mother. We find his conclusion supported by the evidence of record.

■ Appellant also contends that S was unavailable for cross-examination. Our review of the record indicates that S personally responded to all but one of the defense counsel's fifty-two questions on cross-examination and twenty-five questions on re-cross-examination. If defense counsel avoided direct questions in regard to the criminal acts, it was a tactical decision as an effective mechanism to obtain answers was available. Appellant was not limited in the scope or nature of cross-examination. *See Delaware v. Fensterer,* 474 U.S. 15, 18–19, 106 S.Ct. 292, 294, 88 L.Ed.2d 15, 18–19 (1985) (confrontation clause requirements are met if the defense has a full and fair opportunity to probe and expose infirmities in a witness' testimony). We hold that appellant's sixth amendment right to cross-examination was not impaired.

■ Appellant also objects to the use of Mrs. Romey to relay answers stating that "there is nothing in the record suggesting that anyone but the mother could overhear the child's words" and "that it was entirely possible that the daughter's words were changed by the mother." We find this assertion more troublesome and view the situation as a due process question of an appointment of a possibly biased interpreter. *Cf. United States v. Schuring,* 16 M.J. 664 (A.C.M.R.1983) (employee of Camp Humphrey's criminal investigation command was not disqualified to act as an interpreter at trial where he did not previously participate in the case and his translations accurately reflected witnesses' testimony), *petition denied,* 17 M.J. 287 (C.M.A.1984); *Prince v. Beto,* 426 F.2d 875 (5th Cir.1970) (appointment of the husband of a deaf mute as an interpreter for his wife, a victim of an attempted rape, constituted fundamental unfairness and violated due process). In this case, Mrs. Romey was clearly very much interested in continuing her marriage and keeping her family intact. Indeed she was called as a defense witness during the sentencing phase of the trial and testified that she wanted her husband to receive counseling, did not believe the conduct would be repeated, and that it was still important for her two children to have their father available. During the government's case, Mrs. Romey's testimony was essentially neutral. We find no reason to believe Mrs. Romey's "interpretation" was inaccurate or that she was biased. Accordingly, we find that the procedure used here was not fundamentally unfair, resulted in an accurate record of trial, and was not, therefore, a violation of due process.

We have considered the other errors asserted, including the error personally raised by appellant, and find them to be without merit.

The findings of guilty and the sentence are affirmed.

Senior Judge FOREMAN and Judge VARO concur.